**Ben DISKIN—Mass. State Mfg., Co., Plaintiff,**

v.

**J.P. STEVENS & CO., INC., Defendant.**

**Civ. A. No. 86–2477–C.**

United States District Court, D. Massachusetts.

Jan. 28, 1987.

Ben Diskin, pro se.

Otterbourg, Steindler, Houston, Rosen, Kurt J. Wolff, New York City, Gary R. Greenberg, Goldstein and Manello, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This matter arises out of a contract action brought *pro se* by Benjamin Diskin, a manufacturer of woolen garments for women, against J.P. Stevens & Co., Inc. ("Stevens"), formerly in the business of manufacturing woolen goods. Plaintiff is a resident of Milton, Massachusetts and defendant's principal place of business is in New York. The amount in controversy is in excess of $10,000, therefore this Court exercises diversity jurisdiction over the subject matter of the suit pursuant to 28 U.S.C. § 1332(a). This matter is now before the Court on defendant Stevens' motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that the complaint is time barred. Alternatively, Stevens seeks an order pursuant to 9 U.S.C. § 3 staying this action pending arbitration of the dispute according to the terms set forth in the contract.

### I. *Background*

Plaintiff is the sole owner of Massachusetts State Manufacturing Company, an enterprise that purchases fabrics from wholesale suppliers, manufactures garments, and then sells them to retail chain stores. On December 24, 1984, plaintiff travelled to New York City to determine whether any Stevens fabrics were appropriate for his manufacturing needs. Plaintiff found a "full-bodied, lofty all-wool flannel" that suited him, and, according to Stevens,

plaintiff ordered 290 pieces of it. Plaintiff also requested that Stevens send him a ten yard sample for further evaluation. Later that day, while he was still at the Stevens office, plaintiff wrote out a check payable to Stevens for the amount of $151,380.00. The check was dated December 31, 1984. Plaintiff signed the check and on its reverse side wrote the following notation:

> In full payment for 290 pcs. flannel as per contract, less anti. to be figured upon billing. Final total subject to adjustment.

Exhibit C to Defendant's Affidavit.

Subsequent to this transaction, Stevens sent to plaintiff its standard form sales contract. Exhibit A to Defendant's Affidavit. The contract covers 290 pieces of greige goods, priced at $6.30 per yard, to be delivered in April. In the section of the contract marked "ship to," the name of plaintiff's company is lined out and underneath is written "will advise" and "Bill and Hold." According to the initialed areas of the contract, the contract was approved by the Sales Department and the Credit Department. No signatures appear on the contract. Stevens also sent to plaintiff an invoice, dated December 31, 1984, for 290 pieces of greige goods at a price of $155,295.00. Exhibit B to Defendant's Affidavit. On January 14, 1985, Stevens shipped to plaintiff one piece (ten yards) of flannel in the greige at a price of $63.00. An invoice for that amount, numbered 300148 and dated 1/14/85, accompanied the shipment. Exhibit A to Plaintiff's Rebuttal memorandum.

Plaintiff contends that the dispute before the Court arises because the flannel sample he received in mid-January, 1985, was different, and of a lower quality, than the flannel he picked out while at Stevens' office in New York City. After plaintiff received this flannel sample, he sent a letter, dated January 24, 1985, to Stevens, in which plaintiff outlined his disappointment with the fabric and noted that his "interests are stopped for re-evaluation to determine where I go from here." Exhibit B to Plaintiff's Rebuttal Memorandum. According to both parties, this letter marked the beginning of a year-long period of correspondence and telephone calls concerning the greige goods in dispute. Plaintiff refused to assort the allegedly nonconforming goods, thus on June 30, 1986, Stevens shipped the goods via Overnite Transportation Co., to Eastern Distribution, Inc. ("EDI") for plaintiff's account. Exhibit D to Plaintiff's Rebuttal Memorandum. An EDI invoice, no. 13981, shows that the goods were received by EDI on July 7, 1986. Exhibit C to Plaintiff's Rebuttal Memorandum. Plaintiff, a Massachusetts resident, brought an action against Stevens in this Court on August 25, 1986, seeking judgment against the defendant in the amount of his initial payment of $151,380.00 plus interest and costs.

## II. *The Contract*

■ Stevens first maintains that there is an enforceable contract between Stevens and plaintiff, and that by its terms the contract bars plaintiff's institution of this lawsuit. As permitted by the New York Uniform Commercial Code § 2–725(1), the contract shrinks the usual four year limitation on the institution claims to one year.[1] Any claim against Stevens must therefore be commenced within one year of the accrual of the cause of action. Stevens contends that plaintiff's action was instituted sixteen months after it accrued and is therefore time barred. Plaintiff disputes the existence of the contract on the grounds that he never signed it and instead

---

1. Since defendant's place of business is in New York and the transaction at issue took place in New York, and because the contract by its terms specifies that New York law shall govern, the laws of that state shall be the source of applicable law in this matter. *See G.A. Thompson & Co. v. Wendell J. Miller Mortgage Co., Inc.,* 457 F.Supp. 996, 998 n. 2 (S.D.N.Y.1978) (New York law to be applied since it is the state with the most significant relationship to the transaction and the parties); *cf. Skinner v. Tober Foreign Motors, Inc.,* 345 Mass. 429, 187 N.E.2d 669 (1963) (Massachusetts law applies since it is the state of defendant's place of business and state where negotiations took place).

claims he had merely entered into preliminary negotiations with Stevens.

■ Turning first to the issue of whether there was a contract between the parties, it is noted that complaints filed by parties who appear *pro se* are to be liberally construed and are held to standards less stringent than those applied to members of the Bar. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *Gilday v. Boone*, 657 F.2d 1, 2 (1st Cir.1981). Despite a liberal construction of plaintiff's complaint, however, it is evident that he is bound to a contract with Stevens.

■ When confronted with issues involving the formation of contracts, courts in New York apply an objective test. *Camrex Contractors (Maine) Ltd. v. Reliance Marine Applicators, Inc.*, 579 F.Supp. 1420, 1426 (E.D.N.Y.1984). In examining these issues courts look "not [at] the parties' after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time." *Id.* at 1426. It is well established that the test of whether a communication is an offer is whether the recipient could reasonably believe that the offeror intended to give him the power to conclude the contract. *Gennaro v. Rosenfield*, 600 F.Supp. 485, 489–90 (S.D.N.Y.1984). Applying this traditional test to the communication here, it is clear that plaintiff made to Stevens a written offer to purchase Stevens' textiles. Plaintiff went to Stevens' office with the intention of purchasing textiles and in fact he selected suitable textiles. According to plaintiff, he requested that Stevens quote him an approximate price for the quantity of flannel he had selected. Stevens agreed to provide such a price and plaintiff then drafted a check for that amount. Plaintiff's notation on the back of his check contains essential and definite terms, as well as a description of the goods to be covered. Although plaintiff now contends that his check was intended to prove his "credit worthiness" to Stevens, it is not for this Court to engage in an after-the-fact inquiry into plaintiff's state of mind when he wrote the check. It appears to this Court that plaintiff's check is a clear, objective manifestation of his intent to contract. *See* New York Uniform Commercial Code § 2–206(1)(a).[2]

Concluding that in the totality of the circumstances plaintiff's December 31, 1984 check operates as an offer to purchase flannel from Stevens, we now turn to the issue of whether, and in what form, plaintiff's offer was accepted by Stevens.

After plaintiff returned to Massachusetts, Stevens mailed to him a copy of its standard form sales contract, designated as a "confirmation" and dated December 31, 1984. The terms provide that the confirmation is given "subject to all of the terms and conditions on the face and reverse sides ... including the provisions for arbitration...." Moreover the terms of the confirmation provide that it shall become "a contract for the entire quantity specified ... when ... buyer receives and retains this confirmation without written objection for ten (10) days...." Next to the words "accepted by" is printed "J.P. Stevens & Co., Inc."

It is not disputed by plaintiff that he received this confirmation and, although he did not sign it, he failed to object to it. There is no question that this was a transaction "between merchants" within the meaning of the New York Uniform Commercial Code § 2–104(1) and (3).[3] Stevens

---

2. NY UCC § 2–206(1)(a) provides that:
   "unless otherwise unambiguously indicated by the language or circumstances
   (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."

3. NY UCC § 2–104(1) defines "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." NY UCC § 2–104(3) defines "between merchants" as "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

thus contends that the confirmation operates as an acceptance of plaintiff's offer, and that, together with the terms of its standard form contract, it is binding on both parties. I agree. Stevens sent to plaintiff a seasonable confirmation, which I rule operates as an acceptance under the New York Uniform Commercial Code § 2–207. *Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc.*, 366 F.Supp. 1, 8–9 (S.D.N.Y. 1973).

■ The next issue is whether the terms on the reverse side of the Stevens confirmation, including the arbitration and limitation on claims clauses at issue here, become part of the enforceable contract between the parties. The terms are additional to those offered by plaintiff, however under the New York Uniform Commercial Code § 2–207, such terms are to be construed as "proposals for addition to the contract" and, with some exceptions, become part of the contract.

### A. The Limitation on Claims Clause

Where, as here, there is a transaction between merchants, proposals for additional terms become part of the contract unless such terms materially alter it. New York Uniform Commercial Code § 2–207(2)(b); *Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc.*, 366 F.Supp. 1, 7 (S.D.N.Y.1973). It is well established that shortening the time for claims to be made under the contract from four years to one year is not a material alteration.[4] New York Uniform Commercial Code § 2–207(2)(b) com. 5; *Aceros Industriales, S.A. de C.V. v. Florida Steel Corporation*, 528 F.Supp. 1156, 1158 (S.D.N.Y.1982) (fixing of a reasonable time for

complaints to be brought does not constitute a material alteration of the contract). Indeed such a limitation is expressly permitted under the New York Uniform Commercial Code § 2–725(1).[5] Since plaintiff failed to object to the terms of the contract within ten days and is therefore contractually bound, plaintiff is also bound to additional terms that do not materially alter the contract.

■ The limitation on claims is thus an enforceable clause of the contract between the parties. Stevens argues that enforcement of this clause should result in this Court's dismissal of plaintiff's complaint on the grounds that it is time barred. For the following reasons, I disagree.

By the terms of the contract,[6] plaintiff's action would be barred unless it was brought one year of the time the goods were either "installed *or* delivered *or* contracted to have been delivered" (emphasis added). Stevens argues that plaintiff contracted to have the goods delivered in April, 1985, and, since his claim was not brought until sixteen months later, in August, 1986, it is time barred. To construe the language of a contract, courts consider the ordinary, reasonable meaning of its words. *Hong Kong Export Credit Insurance Corporation v. Dun and Bradstreet*, 414 F.Supp. 153, 158 (S.D.N.Y.1975). Stevens overlooks the fact that the "or" language of the clause reasonably can be interpreted to bar an action only when it is brought more than a year after the goods are delivered. The question is, then, when the goods were delivered. Here, defendant maintains that, in accordance with normal

**4.** Paragraph 19 of the contract provides that: Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one (1) year after goods were installed or delivered or contracted to have been delivered. The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of any arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part.

**5.** The New York Uniform Commercial Code § 2–725(1) provides that:

An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

**6.** It is not disputed that the nature of plaintiff's action is covered by the terms of the limitation on claims since the clause bars "any claim by Buyer of any kind, nature or description."

trade practice, the greige goods were made available for assortment by plaintiff during 1985. Defendant's Affidavit at 3. According to Stevens, assortment by the buyer is to take place prior to finishing, coloring and delivery of the fabric by the seller. *Id.* at 4. Since plaintiff determined in mid-January, 1985, that the sample flannel was not what he had ordered, he refused to assort the goods. Stevens does not argue that the unassorted, allegedly nonconforming goods were ever tendered to plaintiff within the meaning of the New York Uniform Commercial Code § 2–503(1), nor are there documents to show that the goods were so tendered. Section 2–503(1) provides that tender of delivery occurs when the seller puts and holds "conforming goods at the buyer's disposition...." Stevens did not tender delivery of the goods when it sent the flannel sample to plaintiff. *City of New York v. Pullman, Inc.*, 662 F.2d 910, 919 (2d Cir.1981), *cert. denied sub nom Rockwell International Corporation v. City of New York*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982) (delivery of ten subway cars for inspection and testing does not constitute tender of delivery so as to begin the running of the statute of limitations on claims). Nor did making the greige goods available for assortment constitute tender of delivery within the meaning of section 2–503(1). For the purposes of the contractual limitation on claims, the one year time period commenced at the time Stevens put the greige goods into the hands of the shipper, Forstman and Company, on June 30, 1986, for shipment to the warehouse. Plaintiff's claim was brought on August 25, 1986, which is within one year of the date of delivery. I rule therefore that plaintiff's claim is not time barred.

### B. *The Arbitration Clause*

■ Once it is concluded that plaintiff is bound to a contract with Stevens and that his action is not time barred, the next issue for consideration is whether the arbitration clause contained in the contract is valid and enforceable.[7] Plaintiff argues that he is not bound by the arbitration clause since he never signed the contract. Stevens makes two primary arguments in support of its request for a stay of this action pending arbitration. First Stevens argues that plaintiff's failure to sign the contract has no effect on whether the clause is enforceable since plaintiff manifested his assent to the contract by failing to return it or express any objection to its terms. Stevens argues second that in enacting the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Congress under its commerce power created a federal law to govern the validity and enforceability of arbitration clauses in agreements affecting interstate commerce. Stevens maintains that the Federal Arbitration Act governs the issue of whether the written but unsigned arbitration clause is to be enforced in this matter.

Turning first to the question of whether the unsigned arbitration clause is to be considered part of the contract between Stevens and the plaintiff, our inquiry starts with the New York Uniform Commercial Code § 2–207(2)(b). The policy underlying that section of the Code is to ensure that where, as here, there is a transaction between merchants, one party does not press additional, materially different terms on another unsuspecting party who would as a result be unfairly surprised or suffer hardship were the additional terms to be enforced. New York Uniform Commercial Code § 2–207(2)(b) com. 4. To enforce an arbitration clause here, however, would not cause hardship or unduly surprise the parties. Courts in New York are divided as to whether arbitration clauses materially alter contracts. *See, e.g., Jones Apparel Group, Inc. v. Petit*, 75 A.D.2d 504, 426

---

**7.** Paragraph 20 of the contract provides that: Any controversy arising out of or relating to this contract or order, or any modification thereof, shall be settled by arbitration before three (3) arbitrators in the City of New York, pursuant to the rules then obtaining of the General Arbitration Council of the Textile Industry, or the American Arbitration Association, or any of their successors, as the Seller may determine.
Exhibit A to Defendant's Affidavit.

N.Y.S.2d 739 (1980) (buyer not bound to unsigned arbitration clause since there is no evidence of agreement between parties and such a clause is a material alteration); *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978) (arbitration clause is material alteration of contract and thus there must be express agreement). In recent cases, however, courts recognize the widespread use of arbitration to resolve disputes in the textile industry. Courts have ruled therefore that arbitration clauses do not materially alter contracts. *Imptex International Corp. v. Lorprint, Inc.*, 625 F.Supp. 1572 (S.D.N.Y.1986); *see also Gaynor-Stafford Industries, Inc. v. Mafco Textured Fibers*, 52 A.D.2d 481, 384 N.Y.S.2d 788 (1976) (in view of fact that arbitration is common in textile industry, arbitration clause is not material alteration of contract); *In re C.M.I. Clothesmakers, Inc.*, 17 UCC Rep. 911 (N.Y.Sup.Ct.1975) (in light of judicially-recognized widespread use of arbitration, such clause is not material alteration). In its opinion in *Imptex*, the court ruled that a textile buyer's failure to object to, or sign, an arbitration clause on the reverse side of the broker's sales contracts did not render the clause unenforceable. *Id.* The court emphasized that it has long been the law of the Second Circuit Court of Appeals that arbitration clauses need not be signed to be enforced. *Id.*[8] The court in *Imptex* ordered the buyer to arbitrate the dispute according to the terms of the contract and ruled that:

> [t]he New York courts have repeatedly held that, as arbitration clauses are commonly used in the textile trade, a textile buyer's failure to object to an arbitration clause upon receipt of both the sales agreement signed by the seller and the initial shipment of goods binds the buyer to the arbitration clause.

*Imptex*, 625 F.Supp. at 1572. The facts of this case are similar. Both the buyer and the seller have been engaged in the textile business for long periods of time.[9] Moreover, the question of whether an additional term materially alters a contract must be determined on a case by case basis. *Cf. John Thallon & Co., Inc. v. M & N Meat Co.*, 396 F.Supp. 1239, 1243 (E.D.N.Y.1975). Here, both parties are familiar with the fact that it is custom of the trade to resolve disputes by arbitration. I rule therefore that such a clause is not a material alteration of the contract and that express acceptance is therefore not required. New York Uniform Commercial Code § 2-207(2)(b).

■ Once it is determined that there is a written agreement binding on both parties to arbitrate a dispute involving interstate commerce, then the Federal Arbitration Act, 9 U.S.C. § 2 governs the enforcement of that agreement.[10] It is clear that in enacting the Federal Arbitration Act, Congress created a "national, substantive law ... that ... governs the questions of validity, revocability and enforceability of arbitration agreements...." *Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537, 540 (S.D.N.Y.1977). A federal court orders arbitration pursuant to 9

---

**8.** *See, e.g., McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980) (established law of the Second Circuit is that parties may be bound to unsigned arbitration agreement); *A/S Custodia v. Lessin International*, 503 F.2d 318, 320 (2d Cir.1974) (Federal Arbitration Act requires written arbitration agreement; ordinary contract principles determine who is bound by written provisions); *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960) (parties are contractually bound to written, unsigned arbitration agreement).

**9.** In his Memorandum, plaintiff maintains that he has been in the textile manufacturing business for forty-five years.

**10.** 9 U.S.C. § 2 provides that any "written provision in any ... contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The "commerce" regulated under the Federal Arbitration Act involves interstate commercial transactions. 9 U.S.C. § 1. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400–01, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967).

U.S.C. § 4 [11] once the court is satisfied that "the making of the agreement for arbitration or the failure to comply ... is not in issue." *Prima Point v. Flood & Conklin,* 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).[12] This court is satisfied that in applying generally accepted principles of contract law, *Avila Group,* 426 F.Supp. at 540, both parties are bound to a written arbitration agreement. I rule therefore that defendant Stevens' motion for a stay pending arbitration should be granted.

Order accordingly.

11. 9 U.S.C. § 4 provides that:
A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

12. 9 U.S.C. § 4 also provides that an arbitration order shall issue when the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."