**Ben DISKIN d/b/a Mass. State Mfg. Co., Plaintiff, Appellant,**

v.

**J.P. STEVENS & CO., INC., Defendant, Appellee.**

No. 87–1234.

United States Court of Appeals, First Circuit.

Submitted Sept. 18, 1987.

Decided Dec. 31, 1987.

Rehearing Denied Jan. 22, 1988.

Ben Diskin, on brief, pro se.

Gary R. Greenberg, P.C., Goldstein & Manello, Boston, Mass., Kurt J. Wolff, and Otterbourg, Steindler, Houston & Rosen, P.C., New York City, on brief, for defendant, appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

PER CURIAM.

The appellant, who appears *pro se*, appeals from the district court's order granting appellee's motion for a stay of the court proceedings pending arbitration pursuant to 9 U.S.C. § 3. The district court's decision is reported. *See Diskin v. J.P. Stevens & Co.*, 652 F.Supp. 553 (D.Mass. 1987). At the outset, we consider whether the order is immediately appealable.

A stay issued under section 3 of the Arbitration Act is normally not appealable since it qualifies as neither "final" under 28 U.S.C. § 1291 nor as an "injunction" under 28 U.S.C. § 1292(a)(1). *See, e.g., Hartford Financial Systems v. Florida Software Systems, Inc.*, 712 F.2d 724 (1st Cir.1983), and cases cited therein. Nonetheless, an important exception to this rule is embodied in the well-established *Enelow-Ettelson* doctrine. This exception provides

that if the underlying suit which is stayed pending arbitration is legal rather than equitable in nature, the stay order will be appealable under 28 U.S.C. § 1292(a)(1). *Id.* at 726. *See also Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935). The original complaint filed by the plaintiff-appellant is quite clearly legal in that he seeks money damages relating to contractual issues.[1] So, the district court's order granting a stay of proceedings pending arbitration is properly appealable under the *Enelow–Ettelson* exception.

Having established that this court has jurisdiction over the appeal, we now move to the relevant underlying issues. Appellant Ben Diskin, d/b/a Mass. State Manufacturing Co., is a manufacturer of women's clothing. In December 1984, Diskin traveled to the New York offices of appellee J.P. Stevens & Co., Inc., where Diskin selected, ordered, and tendered full payment by check for a quantity of flannel to be delivered by Stevens at some point in the future. On the back of the check, appellant indicated that his tender was "In full payment for 290 pcs. flannel as per contract...." Appellant also requested that Stevens send him a sample of the fabric for further evaluation. The record shows that Stevens subsequently sent Diskin a copy of its confirmation and standard sales contract—which contained quantity and price terms as well as a clause indicating that the document would become a contract between the parties if the buyer received and retained it for ten days without issuing a written objection.[2] The terms of the confirmation specifically provided

for resort to arbitration in the event of a dispute between the parties. The district court found that appellant received and retained the form without signing or objecting to it.

In mid-January 1985, appellant received the sample of cloth which he had requested from Stevens and, finding it unsatisfactory, responded by letter dated January 24, 1985 to Stevens. Appellant expressed his dissatisfaction with the sample, and remarked that his "interests are stopped for re-evaluation...." The record shows that appellant refused to assort[3] or give delivery instructions with respect to the ordered goods for a number of months, after which time appellee unilaterally decided to ship the goods to a warehouse to be held for the account of appellant.

On August 25, 1986, appellant filed suit against Stevens, seeking judgment in the amount of his original payment of $151,380 plus interest and costs. Appellee moved for a stay of proceedings pending arbitration. Its motion was allowed by the district court. *See Diskin, supra,* 652 F.Supp. at 558–60.

In granting appellee's motion for a stay pending arbitration, the district court concluded that an enforceable contract between the parties had indeed been formed, *id.* at 555–57, and that appellant was bound by the arbitration clause contained in appellee's written confirmation. *Id.* at 558–59. The parties do not dispute the district court's application of New York law.[4]

## CONTRACT FORMATION

■ With respect to contract formation, appellant contends that the totality of the

---

1. Although appellant's complaint contests the existence of a contract, the district court concluded that a contract did indeed exist between the parties. Appellant's suit for monetary damages resulting from his dissatisfaction with goods supplied by appellee and with appellee's alleged untimely delivery of goods must therefore logically be construed as akin to a suit for breach of contract.

2. A number of other events were also listed as triggering the formation of a contract, none of which are germane to the facts of this case.

3. "Assortment" appears to be a term used in the textile trade which means finishing and coloring unfinished (greige) fabric.

4. We are, of course, at liberty to accept this "implicit concession." *See Mathewson Corp. v. Allied Marine Industries, Inc.,* 827 F.2d 850, 853 n. 3 (1st Cir.1987) (citation omitted). We do so in this instance as respects the determination of whether or not these parties entered into a binding written agreement to arbitrate any disputes arising from this transaction.

parties' dealings were intended only as preliminary negotiations, performed in contemplation of a contract to be formed at a later time. After a careful review of the record, we conclude that the evidence defies appellant's assertion. The district court correctly found that a binding contract had been formed between the parties. We need not recapitulate the district court's thorough discussion of this issue. *See Diskin, supra,* at 556–57.

■ In ascertaining the existence of an enforceable contract, the district court concluded that appellant had failed to object to appellee's written confirmation, and was therefore bound by the terms set forth therein pursuant to New York Uniform Commercial Code § 2–207(1) and (2). Appellant contests this finding, arguing that his January 1985 letter to appellee, which expressed his disappointment with the fabric sample he had received, was in fact an objection to the terms of appellee's confirmation form, thereby precluding the possibility of contract formation. We find this argument to be completely unconvincing. First, appellee's confirmation required objection within 10 days of receipt by appellant: there is no indication that appellant complied with this requirement. Moreover, it was reasonable for the district court to conclude that the vague language of Diskin's letter was insufficient to constitute an objection to the contract as a whole, or to any of its terms. Additionally, appellant's contention that his dissatisfaction with the fabric sample precluded contract formation (or somehow nullified the agreement) is unsupported by the evidence. There is simply no indication that the agreement of the parties was in any way contingent upon appellant's acceptance or rejection of the fabric sample. In fact, we note that appellant accepted and *used* the fabric sample to manufacture garments before rejecting it as being unsatisfactory.

### THE ARBITRATION CLAUSE

■ The appellant received and retained the confirmation form containing the arbitration clause, but neither signed the form nor objected contemporaneously to its contents. The district court found that, under the circumstances, the confirmation operated as appellee's acceptance of the original offer to purchase embodied in the tender of appellant's check for $151,380. *Id.* at 556–57.[5] The district court also found that the arbitration agreement was binding. *Id.* at 558–59. Appellant now contends that his failure to sign the form or otherwise explicitly agree to the arbitration clause prevents him from being bound by it. This contention brings into play § 2–207 of the Uniform Commercial Code. Section 2–207(1) states that:

> ... a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon....

Although additional terms will generally be considered only as proposals for addition to the contract, "[b]etween merchants [the additional] terms become part of the contract unless: ... (b) they materially alter it." U.C.C. § 2–207(2)(b). If the additional term is "such as to materially alter the original bargain, [it] will not be included unless expressly agreed to by the other party." U.C.C. § 2–207, Official Comment 3.

When assessing the materiality of an arbitration clause, one must start with the premise that, under New York law, "it is clear that an arbitration clause is a material addition which can become part of a contract only if it is expressly assented to by both parties." *Matter of Marlene Inds. Corp. (Carnac Textiles),* 45 N.Y.2d 327, 334, 380 N.E.2d 239, 242, 408 N.Y.S.2d 410, 414 (1978) (citations omitted). *Marlene* was a textile case involving an exchange of conflicting forms between buyer and seller. The state's highest court found that the

---

**5.** The record leaves open the possibility that the writings of the parties, that is, the check and the confirmatory form, were simply confirmatory of an oral contract made at the time appellant ordered the goods from appellee. Either approach produces the same result under § 2–207 of the Uniform Commercial Code. *Matter of Marlene Inds. Corp. (Carnac Textiles),* 45 N.Y.2d 327, 380 N.E.2d 239, 408 N.Y.S.2d 410 (1978).

seller's attempted addition of an arbitration clause was a material alteration which was not binding on the buyer absent an express assent to the provision. In *Marlene*, as here, the buyer simply received and retained the seller's form without signing it or otherwise assenting to the arbitration clause. In reaching its conclusion, the court observed the longstanding rule in New York that, in the absence of an express, unequivocal agreement to arbitrate, a party should not be compelled to do so. *Id.* at 333, 380 N.E.2d at 242, 408 N.Y.S.2d at 413. Since an agreement to arbitrate involves a waiver of many of a party's substantive and procedural rights under state law, it would be unjust to imply such a waiver "on the basis of anything less than a clear indication of intent." *Id.* at 334, 380 N.E.2d at 242, 408 N.Y.S.2d at 413.

One year later, the court decided *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 399 N.E.2d 1154, 424 N.Y.S.2d 133 (1979). *Schubtex* involved an oral agreement which was "confirmed" by the seller's form containing an arbitration provision. The buyer retained the seller's written confirmation form without acting on it. The buyer had received and retained similar written confirmations from this seller on two prior occasions. The court indicated that an agreement to arbitrate could, in a proper case, be implied from a prior course of dealing, or from custom and usage in the trade; it held, however, that "such a determination must be supported by evidence which affirmatively establishes that the parties agreed to arbitrate their disputes." *Id.* at 6, 399 N.E.2d at 1156, 424 N.Y.S.2d at 135. The retention of the form, without objection, was insufficient to this end. With regard to the buyer's previous retention of the seller's forms, the court stated that:

> ... inasmuch as the mere retention by the buyer of the form containing the arbitration clause failed to create such an agreement [to arbitrate] in the first instance, repeated use of the same ineffective form should not be held to have done so in subsequent transactions.

*Id.* at 6–7, 399 N.E.2d at 1156, 424 N.Y.S.2d at 135. Thus, in both *Marlene* and *Schubtex*, the New York Court of Appeals has made clear its view that an intention to be bound by an arbitration clause must be affirmatively established, and will not be implied from a party's mere retention of a form containing such a provision.[6]

Applying the holdings of *Marlene* and *Schubtex* to the instant case, we conclude that the record does not support a finding that appellant ever expressed an intention, either implicit or explicit, to be bound by the arbitration provision of appellee's confirmation form. We note that, under New York law, the burden of proving agreement to arbitrate is on the party seeking to resolve the dispute in that forum. *Marben Realty Co. v. Sweeney*, 87 A.D.2d 561, 448 N.Y.S.2d 196, (1st Dept.1982). Here, appellant received and retained appellee's confirmation form without signing it. We have established that, under New York law, this behavior alone fell short of consent to arbitration. Additionally, there was no indication that the issue of arbitration or dispute resolution was ever raised during verbal negotiations between the parties. Through the affidavit of its assistant general counsel, appellee asserts that the parties had "conducted business under this form of contract in the past." Assuming this fact to be true, this statement, without more, provides insufficient evidence to establish Diskin's assent to arbitration through prior dealings of the parties. Under *Schubtex*, mere *use* of the same ineffective form of contract is not the functional equivalent of evidence which affirmatively establishes a party's prior consent to arbitrate. Thus, we will not imply appellant's consent to arbitrate based only on appellee's vague assertion of prior dealings. With respect to appellee's contention that arbitration is a customary method of dispute resolution in the textile industry, "[a] vague, unspecific reference ... to the effect that 'in the

---

**6.** We decline to follow *Imptex International Corp. v. Lorprint, Inc.,* 625 F.Supp. 1572 (S.D.N.Y.1986), relied upon by appellee. *Imptex,* which cited no case decided after 1976, relied upon an outdated view of New York law. We believe that the more modern New York cases, *e.g., Marlene* and *Schubtex,* require a different result.

textile industry arbitration is the usual accepted method of resolving disputes' is not an acceptable substitute ... for finding a specific agreement to arbitrate." *Jones Apparel Group, Inc. v. Petit,* 75 A.D.2d 504, 426 N.Y.S.2d 739 (1st Dept.1980). On this record, Diskin was not bound by an agreement to arbitrate.

Our rejection of the enforceability of the arbitration clause does not undermine our conclusion that the district court, supportably, found that a contract existed. We emphasize, however, that mere recognition of contract is not tantamount to assent to a material additional term; to adopt such an approach would defeat the rationale of U.C. C. § 2-207, which allows contract formation whenever possible, without binding an unconsenting party to clauses which, if enforced, will materially alter the nature of the original agreement.

The motion to stay judicial proceedings was improvidently granted, and is *reversed.* The action is *remanded* to the district court to be heard and determined in that forum. Costs in favor of appellant.