**ALLOY COMPUTER PRODUCTS, INC., Plaintiff,**

**v.**

**NORTHERN TELECOM, INC., Defendant.**

**Civ. A. No. 86–3263–T.**

United States District Court, D. Massachusetts.

March 29, 1988.

---

George C. Caner, Jr., Brien T. O'Connor, Ropes & Gray, Boston, Mass., for plaintiff.

John G. Fabiano, Hale & Dorr, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff designs and manufactures equipment to expand the capacity and improve the performance of personal·computers. One of plaintiff's products is the "QICTAPE" line of tape drive systems for IBM personal computers.

Defendant manufactures "tape drive units", which plaintiff used in making its QICTAPE systems. According to the amended complaint,[1] defendant had represented that its tape drives were equipped with ceramic-coated magnetic heads having a minimum life of 1500 hours. Without informing plaintiff, defendant allegedly provided cheaper, non-ceramic "soft" heads that would not last longer than 500 hours. Plaintiff and its customers claim to have experienced serious problems with the QIC-TAPE units, as a result of this unauthorized substitution.

Plaintiff's amended complaint charges defendant with common law fraud (Count I); fraud in the sale of personal property under Mass.Gen.L. ch. 231, § 85J (Count II); unfair and deceptive practices under Mass.Gen.L. ch. 93A (Count III); breach of express warranties (Count IV); breach of implied warranties (Count V); and breach of the contractual duty of good faith (Count VI). Defendant has counterclaimed for breach of contract and violations of Chapter 93A.

Both parties have moved for partial summary judgment on plaintiff's warranty counts. For the reasons stated below, defendant's motion will be granted, and plaintiff's will be denied.

Throughout their two and one-half year relationship, plaintiff and defendant followed the same procedure for each purchase and sale of tape drives. Plaintiff would submit to defendant a purchase order specifying the number of drives to be purchased, and the price. Defendant would then ship the tape drives to plaintiff, enclosing with each shipment its "General Terms and Conditions of Sale", and a letter stating that "all products are shipped under the General Terms and Conditions".[2]

Defendant's Terms and Conditions contained an explicit limitation on warranties, reading as follows:

LIMITED WARRANTY

... NTI's obligation and Buyer's exclusive remedy under this warranty is limited to the replacement (on an exchange basis) or repair, at NTI's option, of the defective product ...

The warranty and remedy set forth above constitutes the only warranty with respect to the products and buyers exclusive remedy in the event such warranty is breached, and is in lieu of all other warranties, written or oral, statutory, express or implied, including without limitation, the warranty of merchantability and the warranty of fitness for a particular purpose.

---

1. Plaintiff's motion to amend was allowed by the court at conference on February 29, 1988. By agreement of the parties, the pending motions for partial summary judgment will be treated as applying to the amended complaint.

2. Plaintiff's statement of material·facts, filed pursuant to Local Rule 18, states that plaintiff "has no record of receiving" letters from defendant providing that the shipments were made pursuant to defendant's Terms and Conditions. But, as defendant points out, plaintiff produced two such letters from its files during discovery. And, in an affidavit, plaintiff's purchasing manager testified that one of defendant's letters "may have been put in the file by someone who had received a shipment of goods." Plaintiff, therefore, must have received the letters, even if it did not habitually record the fact. Plaintiff also states that it "objected both orally and in writing" to defendant's Terms and Conditions. The affidavit cited for this assertion, however, says only that plaintiff's purchasing supervisor "specifically objected to them on several occasions in conversations with Northern Telecom sales and marketing representatives." The affidavit does not specify which terms or conditions were objected to, or whether the objections occurred in conjunction with any of the sales that are the subject of dispute. The statement plaintiff relies upon is too vague to put a material fact in dispute.

At issue is whether those terms became part of the contract between plaintiff and defendant. The controlling statute is the UCC's "battle of the forms" provision, Mass.Gen.L. ch. 106, § 2–207, which states:

*Additional Terms in Acceptance or Confirmation.*

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered and agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

Plaintiff argues that defendant's warranty limitation was ineffective because it proposed "additional or different terms" that materially altered the contract. But, in *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir.1962), the Court of Appeals ruled that § 2–207 did not make additional terms, such as those proposed in the instant case, part of the contract, because:

It would be unrealistic to suppose that when an offeree replies setting out conditions that would be burdensome only to the offeror he intended to make an unconditional acceptance of the original offer, leaving it simply to the offeror's good nature whether he would assume the additional restrictions. To give the statute a practical construction we must hold that a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an "acceptance ... expressly ... conditional on assent to the additional ... terms."

*Roto–Lith*, 297 F.2d at 500. Under *Roto–Lith*, whenever an offeree's acceptance contains terms that materially alter the contract by burdening the offeror, the offeree has conditioned his participation on the offeror's acceptance of such terms. The offeree's response becomes a counteroffer, to be accepted or rejected by the offeror, rather than an acknowledgment of the original offer. Performance by the offeror may constitute an acceptance. Thus, in the instant case, defendant's warranty limitation became part of the contract between the parties, because defendant is considered to have made plaintiff's acceptance a precondition to its participation.

Plaintiff points out that *Roto–Lith* has been subjected to academic and judicial criticism, because it reverses the outcome that the plain language of § 2–207 would lead parties to expect. *See, e.g., Luria Bros. & Co. v. Pielet Bros. Scrap Iron*, 600 F.2d 103, 113 (7th Cir.1979) (*Roto–Lith* "has been severely criticized by the commentators and often not followed by the courts"); *Leonard Pevar Co. v. Evans Products Co.*, 524 F.Supp. 546, 551 (D.Del. 1981) ("*Roto–Lith* has been widely criticized because it does not reflect the underlying principles of the Code."); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 26–28 (1972) (calling *Roto–Lith* an "infamous" case decided "contrary to the draftsman's policy ... to whittle down the counter-offer rule and form contracts more readily than under the common law").

Nevertheless, *Roto–Lith* continues as binding precedent within this circuit, and its interpretation of § 2–207 has been cited several times, without suggestion that its

holding has been modified or abandoned.[3] *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 55 (1st Cir.1986) ("In *Roto–Lith*, we held that under § 2–207, a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an acceptance expressly conditioned on assent to the additional terms."); *Scott Brass, Inc. v. C & C Metal Products Corp.*, 473 F.Supp. 1124 (D.R.I. 1979) (*Roto–Lith* distinguished where offeror objected to terms submitted by offeree); *Gilbert & Bennett Mfg. Co. v. Westinghouse Electric Corp.*, 445 F.Supp. 537, 546 (D.Mass.1977) (following *Roto–Lith* and holding that, "by paying for and accepting delivery ... without notifying the seller of its objection to the additional terms, [the offeror] accepted the counteroffer proposed in the ... acknowledgment and became bound by all its terms, including the warranty disclaimer clause.").

Under the teaching of *Roto–Lith*, plaintiff is deemed to have accepted defendant's warranty limitations when it accepted the tape drives and, therefore, may not sue for a breach of other warranties, express or implied.[4]

An order will issue.

### ORDER

The court hereby orders as follows:

1. Defendant's motion for partial summary judgment is DENIED as to Counts I and II of the amended complaint, alleging fraud.

2. For the reasons set forth in an accompanying memorandum, defendant's motion for partial summary judgment is ALLOWED as to Counts IV and V of the amended complaint, alleging breach of warranty, and plaintiff's cross-motion for partial summary judgment on Counts IV and V of the amended complaint is DENIED.

It is so ordered.

---

3. Plaintiff points to *Diskin v. J.P. Stevens & Co., Inc.*, 836 F.2d 47 (1st Cir.1987), as a case in which the First Circuit interpreted § 2–207 without applying *Roto–Lith.* Diskin, however, was a diversity case decided under the substantive law of New York. Since *Roto–Lith* does not reflect New York law, *see Rite Fabrics, Inc. v. Stafford–Higgins Co., Inc.*, 366 F.Supp. 1, 7–9 (S.D.N.Y. 1973) (rejecting *Roto–Lith* ) (cited in *Diskin v. J.P. Stevens Co.*, 652 F.Supp. 553, 557 (D.Mass.), *aff'd,* 836 F.2d 47 (1st Cir.1987)), the First Circuit's departure from *Roto–Lith* in *Diskin* was entirely justified. *Diskin,* however, has no bearing upon the vitality of *Roto–Lith* in Massachusetts. Plaintiff also cites two Massachusetts Superior Court cases that it claims are inconsistent with *Roto–Lith.* See *Furtado v. Woburn Machine Co.*, 19 U.C.C.R.S. 760 (1976); *Chicopee Concrete Service, Inc. v. Hart Engineering Co.*, 20 Mass.App. 315, 479 N.E.2d 748 (1985), *rev'd,* 398 Mass. 476, 498 N.E.2d 121 (1986). *Chicopee Concrete* does not reach the issue that *Roto–Lith*

decided. In *Furtado* the court declined to follow *Roto–Lith,* but observed that there is no Supreme Judicial Court opinion on point.

4. Plaintiff argues that it may recover even if defendant's warranty limitation applies, because defendant's "repair and replace" warranty failed in its essential purpose. *See* Mass.Gen.L. ch. 106, § 2–719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.") Plaintiff alleges that the repair and replacement remedy failed because, when plaintiff returned defendant's products, defendant did not repair the defect, but instead sent the drives back with new soft heads. Whether the warranty failed in its essential purpose is obviously a fact question for trial. At this point, the court holds only that the operative warranty is the one contained in defendant's Terms and Conditions.