**POLYCLAD LAMINATES, INC.**

v.

**VITS MASCHINENBAU GmbH.**

Civ. No. 89–127–L.

United States District Court,
D. New Hampshire.

May 29, 1990.

James S. Harrington, Wellesley, Mass., for plaintiff.

Sabin Willett, Concord, N.H., for defendant.

## ORDER

STAHL, District Judge.

Plaintiff Polyclad Laminates, Inc. (Polyclad) objects to and moves for reconsideration of the Magistrate's April 18, 1990, Report and Recommendation in which the Magistrate proposed that the Court stay the pending lawsuit in favor of arbitration.

### 1. Background

In 1982 Polyclad, a manufacturer of printed electronic circuit boards, began negotiations to purchase a "custom-built thermal incinerator and vertical impregnating machine" manufactured by VITS. During the course of negotiations, VITS sent Polyclad one quotation on July 14, 1982, Defendant's Motion to Stay (attachment A), two additional quotations on January 26, 1983, *id.* (attachments B and C), and an order confirmation on February 11, 1983, *id.* (attachment F). Each of these documents contained the following sentence, printed as a single paragraph, just above the signature line: "This quotation is subject to our conditions of sale and delivery no. LW 188 which please find enclosed."

LW 188, a multi-page document prepared under the auspices of the United Nations Economic Commission for Europe, is entitled "General Conditions for the supply of Plant and Machinery for Export". Pertinent here is provision 13.f. which states: "Any dispute arising out of the Contract shall be finally settled, in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators designated in conformity with those Rules."

On March 16, 1983, Polyclad responded with two purchase orders. Although Polyclad's purchase orders make no mention of arbitration, they both contain the following language:

## TERMS AND CONDITIONS OF PURCHASE

The only terms and conditions that apply to this offer to purchase the material, items, products, or components (hereinafter materials) and/or services (hereinafter services) set forth in the face of this purchase order or exhibits hereto are those set forth below, those preprinted on or added to the face of this purchase order *and those which are* contained in attachments or exhibits attached hereto, or *referenced herein:* seller is hereby notified in advance that buyer takes exception to any and all changes, additions or deletions which seller may make to the terms contained herein.

(Emphasis supplied.)

Referenced in one of Polyclad's March 16, 1983, purchase orders, and thus recognized as a condition of the agreement, was a VITS order confirmation which contained the referenced to form LW 188. No objection was taken to the terms of form LW 188 in the so-called Purchase Order. Defendant's Motion to Stay (attachment H). On March 25, 1983, VITS sent a final order confirmation, *id.* (attachment I), which again contained the sentence making reference to "no. LW 188."

In March 1987, a thermal incinerator designed, manufactured, sold, and installed by VITS at Polyclad's plant in Franklin, New Hampshire, overheated, causing a fire in the plant. Polyclad filed this action to recover damages related to that fire.

### 2. Discussion

■ Before the Court is VITS's motion to stay discovery and to stay the action pending arbitration under authority of the Federal Arbitration Act, 9 U.S.C. § 3 (1947).[1] At issue is whether the arbitration

---

**1.** 9 U.S.C. § 3, which authorizes this Court to order such a stay, reads as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any

issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or

provision contained in LW 188 is part of the agreement between Polyclad and VITS.

The Magistrate reasoned that this case presents a classic "battle of forms", resolution of which requires application of § 2–207 of the Uniform Commercial Code ("U.C.C.").[2]   In relevant part, § 2–207 reads as follows:

Additional Terms in Acceptance or Confirmation.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract.   Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it;  or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

As explained in the comments to § 2–207, "Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2).  If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party." [3]

Relying principally on the decision in *Roto–Lith v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir.1962), the Magistrate found that the parties had agreed to arbitrate their disputes.   *Roto–Lith* was an early case interpreting U.C.C. § 2–207 which held that when a seller's acknowledgment materially alters the buyer's order, the seller's forms should be treated as a counteroffer expressly conditioned on the buyer's acceptance of the different terms.   In *Roto–Lith*, the buyer was deemed to have accepted the counter-offer by receiving the goods and using them without objection.

The Court finds that *Roto–Lith* does not control here for two reasons.   First, the decision has been widely criticized as an incorrect application of § 2–207; its value as precedent is therefore uncertain.   *See* J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code (1980), at 28 (referring to *Roto–Lith* as "the infamous case").   *See also, C. Itoh & Co. v. Jordan International Co.*, 552 F.2d 1228, 1235 n. 5 (7th Cir.1977) ("The *Roto–Lith* decision has been subjected to severe criticism by the commentators");   *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp. 820, 828 (S.D.N.Y. 1988) ("The *Roto–Lith* approach has been criticized extensively for confounding the plain language of Section 2–207"), *aff'd without opinion*, 895 F.2d 1410 (2d Cir. 1989);   *Id.* at 828 n. 19 ("the consensus is clear that *Roto–Lith* is not reliable precedent");   *Leonard Pevar v. Evans Product Co.*, 524 F.Supp. 546, 551 (D.Del.1981) (rejecting *Roto–Lith* ).   *But see Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 55 (1st Cir.1986) (citing *Roto–Lith* for the proposition that "under § 2–207, a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an acceptance expressly conditional on assent to the additional terms").

proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**2.**  U.C.C. § 2–207 is codified at ch. 382–A:2–207 of New Hampshire Revised Statutes Annotated.

**3.**  Although a few courts have held otherwise, the majority view is that proposals to arbitrate disputes materially alter a contract.   Compare, *Supak & Sons, Mfg. Co. v. Pervel Industries, Inc.*, 593 F.2d 135, 136 (4th Cir.1979) (proposal to arbitrate is material alteration) *with N & D Fashions, Inc. v. D H J Industries, Inc.*, 548 F.2d 722, 726 (8th Cir.1976) (whether arbitration clause constitutes a "material alteration" is a question of fact).   *See generally*, Annotation, *Sales–Terms Altering Contract*, 72 A.L.R.3d 479, 496–505 (1976 & Supp. August 1989).

Second, in this Court's view, this dispute does not require application of § 2–207. LW–188 was not introduced by VITS in an "expression of acceptance" to which § 2–207 applies. Instead, VITS made reference to LW–188 in the very first memorialization of the parties' discussions. VITS consistently referred to LW–188 in subsequent quotations and confirmations. Contrary to the Magistrate's assessment, LW–188 was a term contained in the offer, not a material alteration to the original agreement.

This distinction is made clear by comparison with cases that do require application of § 2–207. For example, in *Diskin v. J.P. Stevens & Co., Inc.*, 836 F.2d 47 (1st Cir. 1987), the buyer went to the manufacturer's New York office, ordered goods and tendered payment in full. Later, the manufacturer sent a sales contract which contained an arbitration provision. The *Diskin* court refused to require the parties to arbitrate, holding that the arbitration clause was a material alteration contained in an expression of acceptance made unenforceable by operation of § 2–207. In the case-at-bar, arbitration was first proposed in the initial offer; it was not added later as in the *Diskin* case.

As stated by a respected commentator, "One who signs or accepts a written instrument without reading it with care is likely to be surprised and grieved at its contents later on. In most cases he has been held bound in accordance with its written terms." 3 A. Corbin, *Corbin on Contracts* § 607 (1960 & Supp.1989). *See also Weitz Co., Inc. v. Mo–Kan Carpet, Inc.*, 723 F.2d 1382, 1385 (8th Cir.1983) (a party to a contract is "bound by the document even though it has not expressly accepted all of the contract terms or is even aware of them"); *Coleman v. Prudential Bache Securities, Inc.* 802 F.2d 1350, 1352 (11th Cir.1986); *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir.1985). Polyclad received five documents from VITS referencing LW 188.

Polyclad read and accepted at least one of the documents without making objection to the incorporation of LW 188.[4]

■ Polyclad denies that it received a copy of LW 188 and argues that it cannot be bound to an arbitration clause in a document it never saw. Even assuming that Polyclad never received a copy of LW 188, the Court finds this argument unconvincing. This Court accepts the principle that, "the parties to a contract are chargeable with such knowledge that the exercise of ordinary diligence would have revealed." *Southern National Bank of Houston v. Crateo, Inc.*, 458 F.2d 688, 693 (5th Cir. 1972). At some point, certainly after receiving five letters from VITS making reference to LW 188, Polyclad had a duty to obtain a copy and object to any unacceptable terms. Polyclad's failure to do so cannot allow it to avoid a material part of the agreement to which it is a party.

Accordingly, for the reasons stated hereinabove, after consideration of Polyclad's objection to the Magistrate's Report & Recommendation, Defendant's motions to stay discovery (document no. 11) and to stay the action (document no. 12) are herewith granted.

SO ORDERED.

---

**4.** Specifically, in the May 1983 purchase order, Polyclad stated: "Equipment, pricing, delivery and payment terms are as stated in the order confirmation with the following addition ..."

defendant's Motion, attachment G. The additions did not address arbitration or LW 188 but the order confirmation which Polyclad accepted did.