In the Matter of the Arbitration between MARLENE INDUSTRIES CORP., Appellant, and CARNAC TEXTILES, INC., Respondent.

First Department, November 15, 1977

## APPEARANCES OF COUNSEL

*Philip Sherwood Greenhaus* of counsel *(Ballon, Stoll & Itzler,* attorneys), for appellant.

*Martin W. Fogel* of counsel *(Fogel, Kamhi & Spiegler, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

KUPFERMAN, J. P.

The parties entered into an oral agreement whereby the petitioner Marlene Industries Corp. agreed to buy and the respondent Carnac Textiles, Inc. agreed to sell fabrics at a stated price in a specific color for a specific delivery time. A dispute arose as to the payments owing from Marlene to Carnac, and Carnac served a notice of intention to arbitrate,

and Marlene moved to stay the arbitration contending that it had not agreed to arbitrate.

Subsequent to the oral agreement and prior to delivery of merchandise, Marlene forwarded a "purchase order", a one-page printed sheet with a great deal of blank space, on which had been written the specifications, time of delivery, etc. Printed at the bottom of this form was the following language: "This purchase order cannot be superceded by a [sic] unsigned contract notwithstanding retention: unsigned contracts, if any, shall be deemed an acknowledgement only." Almost simultaneously, Carnac sent to Marlene an "acknowledgement of order", which was also a one-page printed sheet with a great deal of blank space, on which had been typed the specifications, time of delivery, etc. At the bottom of this form, in smaller print, were some 13 lines of "boiler plate" contractual language, including a provision for arbitration.

It is conceded that neither party signed the other party's form, and that the merchandise was delivered and accepted and, to some extent, paid for. Marlene Industries contends that the arbitration clause would be binding only if Marlene had assented to it in writing, which it did not do. It argues further that its own form indicates that an unsigned contract will have no validity other than as an acknowledgement.

General principles such as the fact that arbitration is favored (see *Matter of Prinze [Jonas]*, 38 NY2d 570, 575) or that a party has no duty to arbitrate unless there has been agreement to that effect *(Matter of Lehman v Ostrovsky*, 264 NY 130) do not really help us. However, the Uniform Commercial Code makes it clear although in the context directed toward the Statute of Frauds, that as between merchants where "a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents" written notice of objection should be given within 10 days after it is received. (Uniform Commercial Code, § 2-201. See *Trafalgar Sq. v Reeves Bros.*, 35 AD2d 194.)

The dissent quite properly presents another point of view. However, we believe that the better approach would be to enforce the arbitration provision. The seller, Carnac Textiles, Inc., supplied the fabrics in accordance with its "acknowledgement of order", and the objection to its provisions was not made until after the dispute arose. In an area where arbitration is a norm rather than an exception, the party objecting thereto should make it known within a reasonable time

(Uniform Commercial Code, § 2-207). Even the Marlene Industries form, the language of which is quoted above, while showing an objection to unsigned contracts, does not specifically object to arbitration.

The judgment of the Supreme Court, New York County (GREENFIELD, J.) entered January 13, 1977, which denied the petitioner-appellant's application to stay the arbitration demanded by the respondent, should be affirmed without costs.

MARKEWICH, J. (concurring). I concur in the result reached in the opinion of KUPFERMAN, J. P., on the simple ground that petitioner consented to the arbitration agreement by its conduct.

SILVERMAN, J. (dissenting). The issue in this case is not whether there was a contract for the sale of goods, there plainly was such. The issue is whether the parties agreed to arbitrate.

In the present case, the buyer sent a purchase order which did not contain an arbitration clause, and which stated it could not be superseded by an unsigned contract notwithstanding retention, and that unsigned contracts would be deemed an acknowledgment only. Although the buyer's purchase order contained a provision that it would not be valid unless signed by both parties, this purchase order was at least an indication that the buyer did not contemplate arbitration and would not be bound by an unsigned confirmation received from the seller.

The day after the buyer's purchase order was sent, the seller sent an "Acknowledgment of Order." At the bottom of this acknowledgment of order there appeared a paragraph consisting of 13 long lines of very small type. In the fourth through seventh lines, in no way distinguishable from the rest of the paragraph, there was a provision for arbitration. In my view, this was insufficient to indicate an agreement by the buyer to arbitrate.

"No one is under a duty to resort to arbitration unless by clear language he has so agreed" (Matter of Lehman [Ostrovsky], 264 NY 130, 132) and "parties are not to be led into arbitration unwittingly through subtlety" (Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 291).

With respect to arbitration agreements contained in form confirmations of sales contracts, Justice BREITEL said, in Matter of Doughboy Inds. (Pantasote Co.) (17 AD2d 216, 218):

"This case involves only the application of the arbitration clause. Arguably, a different principle from that applied here might, under present law, govern other of the terms and conditions in either of the commercial forms. The reason is the special rule that the courts have laid down with respect to arbitration clauses, namely, that the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety".

Where, as here, each party has used its own forms, one containing a provision for arbitration, and the other not, and neither has done something unequivocally referable to the other's form rather than its own, it has usually been held that there was no agreement to arbitrate. (*Matter of Doughboy Inds. [Pantasote Co.], supra; Matter of Layton-Blumenthal [Wasserman Co.],* 280 App Div 135.)

Particularly apropos to the present case, with its buried arbitration clause, are the remarks of this court in *Matter of Doughboy Inds. (Pantasote Co.) (supra,* p 220): "As pointed out earlier, an agreement to arbitrate must be clear and direct, and must not depend upon implication, inveiglement or subtlety * * * It follows then that the existence of an agreement to arbitrate should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet".

Again, in the *Doughboy* case, this court considered the effect of section 2-207 of the Uniform Commercial Code on the "problem of conflicting commercial forms" (p 221).

In essence, that section provides that a confirmation form sent within a reasonable time is effective "even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." (Uniform Commercial Code, § 2-207, subd [1].) However, the statute says that as between merchants such additional terms become part of the contract unless "they materially alter it." (Uniform Commercial Code, § 2-207, subd [2], par [b].) As to this provision, this court, in the *Doughboy* case, said (pp 222-223): "On this exposition, the arbitration clause, whether viewed as a material alteration under subsection (2), or as a term nullified by a conflicting provision in the buyer's form, would fail to survive as a contract term. In the light of the New York cases, at least, there can be little question that an agreement to arbitrate is a material term, one not to be injected by implica-

tion, subtlety or inveiglement. And the conclusion is also the same if the limitation contained in the offer (the buyer's purchase order) is given effect, as required by paragraph (a) of subsection (2) of the new section."

Bearing in mind the fact that "the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms" *(Doughboy Inds. supra,* p 219), I think there was just no meeting of the minds on the arbitration clause.

In a case, which on its facts appears to me to be indistinguishable, this court affirmed a stay of arbitration on the opinion of Special Term. In that case, in *Matter of Trim Corp. of Amer. v Richloom Fabrics Corp.* (49 AD2d 845), New York County Clerk's Index No. 13807/74, Special Term denied arbitration for the reasons I have stated.

I would reverse the order appealed from, on the law, and grant the application of petitioner-appellant to stay the arbitration.

YESAWICH, J., concurs with KUPFERMAN, J. P.; MARKEWICH, J., concurs in an opinion; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on January 13, 1977, affirmed without costs and without disbursements.