OPINION OF THE COURT
Gabrielli, J.
This appeal involves yet another of the many conflicts which arise as a result of the all too common business practice of blithely drafting, sending, receiving, and filing unread *330 numerous purchase orders, acknowledgments, and other divers forms containing a myriad of discrepant terms. Both parties agree that they have entered into a contract for the sale of goods; indeed, it^would appear that there is no disagreement as to most of the essential terms of their contract. They do disagree, however, as to whether their agreement includes a provision for the arbitration of disputes arising from the contract.
Petitioner Marlene Industries Corp. (Marlene) appeals from an order of the Appellate Division which, one Justice dissenting, affirmed a judgment of Supreme Court denying an application to stay arbitration. There should be a reversal and arbitration should be stayed, for we conclude that the parties did not contract to arbitrate.
The dispute between the parties, insofar as it is relevant on this appeal, is founded upon an alleged breach by Marlene of a contract to purchase certain fabrics from respondent Carnac Textiles, Inc. (Carnac). The transaction was instituted when Marlene orally placed an order for the fabrics with Carnac. Neither party contends that any method of dispute resolution was discussed at that time. Almost immediately thereafter, Marlene sent Carnac a "purchase order” and Carnac sent Marlene an "acknowledgement of order”. Marlene’s form did not provide for arbitration; it did declare that it would not become effective as a contract unless signed by the seller, and that its terms could not be "superceded by a[n] unsigned contract notwithstanding retention”. Carnac’s form, on the other hand, contained an arbitration clause placed in the midst of some 13 lines of small type "boilerplate”. It also instructed the buyer to "sign and return one copy of this confirmation”. However, neither party signed the other’s form. When a dispute subsequently arose, Carnac sought arbitration, and Marlene moved for a stay.
The courts below have denied the application to stay arbitration, the Appellate Division reasoning that "as between merchants where 'a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents’ written notice of objection should be given within 10 days after it is received” (59 AD2d 359, 360, quoting Uniform Commercial Code, § 2-201, subd [2]). Since Marlene had retained without objection the form containing the arbitration clause, the court concluded that Marlene was bound by that clause. We disagree.
*331 This case presents a classic example of the "battle of the forms”, and its solution is to be derived by reference to section 2-207 of the Uniform Commercial Code, which is specifically designed to resolve such disputes. The courts below erred in applying subdivision (2) of section 2-201, for that statute deals solely with the question whether a contract exists which is enforceable in the face of a Statute of Frauds defense; it has no application to a situation such as this, in which it is conceded that a contract does exist and the dispute goes only to the terms of that contract. In light of the disparate purposes of the two sections, application of the wrong provision will often result in an erroneous conclusion. As has been noted by a recognized authority on the code, "[t]he easiest way to avoid the miscarriages this confusion perpetrates is simply to fix in mind that the two sections have nothing to do with each other. Though each has a special rule for merchants sounding very much like the other, their respective functions are unrelated. Section 2-201(2) has its role in the context of a challenge to the use of the statute of frauds to prevent proof of an alleged agreement, whereas the merchant rule of section 2-207(2) is for use in determining what are the terms of an admitted agreement” (Duesenberg, General Provisions, Sales, Bulk Transfers and Documents of Title, 30 Business Law 847, 853).[1]
*332 Subdivison (2) of section 2-207 is applicable to cases such as this, in which there is a consensus that a contract exists, but disagreement as to what terms have been included in that contract. Subdivision (1) of section 2-207 was intended to abrogate the harsh "mirror-image” rule of common law, pursuant to which any deviation in the language of a purported acceptance from the exact terms of the offer transformed that "acceptance” into a counter-offer and thus precluded contract formation on the basis of those two documents alone (see Poel v Brunswick-Balke-Collender Co., 216 NY 310). Under subdivision (1) of section 2-207, however, an acceptance containing additional terms will operate as an acceptance unless it is "expressly made conditional on assent to the additional or different terms”. [2] Having thus departed from the common-law doctrine, it became necessary for the code to make some provision as to the effect upon the contract of such additional terms in an acceptance. Subdivision (2) was designed to deal with that problem.
Before continuing, we would note that the section speaks of both acceptances and written confirmations. It is thus intended to include at least two distinct situations: one in which the parties have reached a prior oral contract and any writings serve only as confirmation of that contract; and one in which the prior dealings of the parties did not comprise actual formation of a contract, and the writings themselves serve as offer and/or acceptance. In either case, the writing or writings may contain additional terms, and in either case the effect of such additional terms under the code is the same. Thus, on this appeal, since the prior discussions of the parties did not reach the question of dispute resolution, it is unnecessary to determine whether those discussions rose to the level of contract formation, or whether no contract was created until the exchange of forms.[3] Therefore, whether Marlene’s form is *333 an offer and Carnac’s an acceptance, or whether both are mere confirmations of an existing oral contract, the result in this case is the same, and that result is dependent upon the operation of subdivision (2) of section 2-207.
Subdivision (2) of section 2-207 provides that any additional terms in an acceptance or a written confirmation are to be considered merely proposals for additions to the contract, and that such terms normally will not become a part of the contract unless expressly agreed to by the other party. As with many sections of the code, however, there is a special provision for merchants:
"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
"(a) the offer expressly limits acceptance to the terms of the offer;
"(b) they materially alter it; or
"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received” (Uniform Commercial Code, § 2-207, subd [2]).
The parties to this dispute are certainly merchants, and the arbitration clause is clearly a proposed additional term, whether Carnac’s form be considered an acceptance of an oral or written offer or a written confirmation of an oral agreement. As such, it became a part of the contract unless one of the three listed exceptions is applicable. We hold that the inclusion of an arbitration agreement materially alters a contract for the sale of goods, and thus, pursuant to section 2-207 (subd [2], par [b]), it will not become a part of such a contract unless both parties explicitly agree to it.
It has long been the rule in this State that the parties to a commercial transaction "will not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate” (Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 512; accord Gangel v De Groot, 41 NY2d 840, 841; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 289; Matter of Lehman v Ostrovsky, 264 NY 130, 132). The reason for this requirement, quite simply, is that by agreeing to arbitrate a party waives in large part *334 many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent (see Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], supra, p 289; Siegel, New York Practice, § 588, p 835).
Since an arbitration agreement in the context of a commercial transaction "must be clear and direct, and must not depend upon implication, inveiglement or subtlety * * * [its] existence * * * should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet” (Matter of Doughboy Inds. [Pantasote Co.] 17 AD2d 216, 220). Thus, at least under this so-called "New York Rule” (Squillante, General Provisions, Sales, Bulk Transfers and Documents of Title, 33 Business Law 1875, 1881), it is clear that an arbitration clause is a material addition which can become part of a contract only if it is expressly assented to by both parties (see Matter of Doughboy Inds. [Pantasote Co.] supra; accord Frances Hosiery Mills v Burlington Inds., 285 NC 344; see, also, Duesenberg, General Provisions, Sales, Bulk Transfers, and Documents of Title, 30 Business Law 847, 853). Applying these principles to this case, we conclude that the contract between Marlene and Carnac does not contain an arbitration clause; hence, the motion to permanently stay arbitration should have been granted.
Accordingly, the order appealed from should be reversed, with costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, and the motion to permanently stay arbitration granted.

. The proper and rather limited role of subdivision (2) of section 2-201 has been graphically illustrated by Professors White and Summers, who consider it to be a partial exception to the Statute of Frauds which “merely ameliorates the writing requirement. A writing is still required, but it need not be signed by the party to be charged. The character of this exception is best understood in light of the form of fraud it was designed to combat. Assume that Orval Orfed and Len Lemhi orally agree over the telphone that Orfed will sell Lemhi 1000 bushels of wheat at $40 a bushel. Orfed, the seller, thereafter sends a signed confirmatory memorandum to Lemhi reciting the terms of the deal, a common practice in such transactions. Such a memo would be good against Orfed under 2-201 should Orfed back out and Lemhi sue him for damages. But absent 2-201(2) the confirmatory memo would not be good against Lemhi, for it is not signed by him as required by 2-201(1). Thus Lemhi would be free to sit back and 'play the market.’ If at delivery date the cost of wheat had fallen to some level below $40 a bushel, and he wanted to buy elsewhere, he could back out, whereas Orfed could not back out, at least so far as the statute of frauds goes, should the market rise. Section 2-201(2) is designed to prevent the Lemhis of the world from taking advantage of the Orfeds. It says that a memo good against Orfed will also be good against Lemhi provided that (1) both are merchants, (2) the memo is sent by Orfed to Lemhi within a reasonable time (after the phone call?), (3) the memo by its terms 'confirms’ the oral contract, (4) the memo is good against Orfed uner 2-201(1), (5) Lemhi receives it, (6) Lemhi has 'reason to know its contents,’ and (7) Lemhi does not object to its contents within ten days of receipt. This carefully circumscribed section thus seeks to combat one form of fraud which pre-Code versions *332 of the statute of frauds actually facilitate. At the same time 2-201(2) itself encourages the common and wise business practice of sending memoranda confirming oral deals, for the section obviates a disadvantage to which the sender would otherwise be subject” (White & Summers, Uniform Commercial Code, § 2-3, pp 47-48).

. Assuming, arguendo, that Carnac’s form was an acceptance rather than a confirmation, we would note that it did not expressly condition acceptance upon Marlene’s assent to inclusion of an arbitration provision (but cf. Roto-Lith v Bartlett & Co., 297 F2d 497).

. It should be noted that in some cases, there may be no prior oral agreement, and the terms of the forms utilized may be so divergent as to preclude contract formation in the absence of further action upon the part of the parties (cf. Uniform Commercial Code, § 2-207, subd [3]). This is not such a case.