In the Matter of the Arbitration between NOVIK & CO., INC., Petitioner,

v.

JERRY MANN, INC., and Lucky Girl of California, Inc., Respondents.

No. 80–Civ. 4268.

United States District Court, S. D. New York.

Sept. 12, 1980.

448

Ballon, Stoll & Itzler, New York City, by Martin I. Samuels, New York City, for petitioner.

Berlack, Israels & Liberman, New York City, by Rosalind F. Kaufman, New York City, for respondents.

SOFAER, District Judge:

Petitioner Novik & Co., Inc. ("Novik") seeks to enforce an alleged agreement by respondent Jerry Mann, Inc. ("Mann") to arbitrate a dispute, and to enjoin the prosecution by Mann and Lucky Girl of California, Inc. (Mann's wholly owned subsidiary), of suits commenced by them in California state courts.

Diversity of citizenship is present, and despite defendants' strenuous arguments, it is clear that a valid agreement to arbitrate in New York is a sufficient basis for personal jurisdiction over respondents. *E. g., Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S. A.*, 243 F.2d 342 (2d Cir. 1957). Furthermore, such an agreement enables a federal court to order related state–court proceedings stayed, as Judge Pollack clearly and carefully explained in *Burger Chef Systems, Inc. v. Baldwin Inc.*, 365 F.Supp. 1229, 1233–34 (S.D.N.Y.1973). The question in this case is whether an agreement to arbitrate was in fact reached.

The affidavits and testimony in this case reveal that, during June 1979, Novik offered for sale some 29,000 yards of denim fabric. A textile broker in New York named Arthur A. Aberman, who operates Archley Sales, Inc., determined through another broker in California (Mayer-Knopf) that respondent Mann was willing to buy the fabric at $1.62 per yard. On June 15, 1979 he called Novik, confirmed that the sale would proceed, and prepared a "salesnote" describing the transaction, on stationery of Archley Sales. The salesnote is dated June 15, 1979, and bears the number Z–11661.

Aberman testified that it has been his practice for many years to utilize the particular form of salesnote prepared in this case. The note has three sheets, with carbon paper in between. The top or first page is intended for the seller, and contains a provision by which the seller agrees to pay Archley a commission. (PX–1) The middle or second page is intended for the buyer, and the bottom or third page is retained by Archley. All three pages bear the label "CONFIRMATION," and contained the following language:

This Salesnote is subject to the provisions of Standard Cotton Textile Salesnote (with Specification G) which by this reference is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller. No variation therefrom shall be valid unless accepted in writing.

Any controversy arising under, or in relation to, this contract shall be settled by arbitration. If the parties are unable to agree respecting time, place, method or rules of arbitration, then such arbitration shall be held in the City of New York in accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry. And the parties consent to the jurisdiction of the Supreme Court of said State and further consent that any process or notice of motion or other application to the Court or Judge thereof may be served outside the State of New York by registered mail or by personal service provided a reasonable time for appearance is allowed.

At the bottom of each page of Archley's salesnote is a small stub, separated from the main part of the page by perforations. Each stub contains the Archley name and address, and spaces for the salesnote number, date, and acknowledgment. Each also

contains the following instruction in bold type: "Please Sign Stub and Return at Once."

After Aberman prepared the salesnote for the merchandise involved in this case, he promptly mailed the buyer its copy and hand–carried seller its copy. Seller signed the stub on its copy of Salesnote Z–11661, and returned it to Aberman on the day it was prepared, June 15, 1979. (PX–3) Furthermore, Aberman testified that some days later he received the stub from buyer's copy of the same salesnote, bearing the date of June 22, 1979, and the unquestionably authentic signature of Gerald Geisler, Comptroller of Mann. (PX–4)

Despite these facts, as well as the explicit language in the salesnote that it constituted the parties' entire contract, and the unambiguous commitment to arbitrate, respondents claim that the salesnote was not the contract in this transaction, and that they should be permitted to continue their state–court suits. They note that on June 15, as soon as Novik heard from Aberman that a buyer had been found, Novik telexed Mann (or Lucky Girl) an invoice of sale (Ex. 3, Weiner Affidavit), and simultaneously ordered its "people in Tennessee to proceed with the shipping of this merchandise . . . " (PX–3). The record clearly reveals, in fact, that Novik's order to ship preceded its return to Aberman of the stub on Salesnote Z–11661. Respondents also note that they had no dealings whatever with Aberman and Archley, having worked entirely through the California broker, Mayer–Knopf. They, too, treated the transaction as complete on June 15, days before they could have received their copy of the Archley salesnote. (See Ex. 1 & 2, Weiner Affidavit) Finally, in correspondence concerning this shipment, both parties referred to Novik's invoice number, not to the Archley salesnote number. Respondents argue, in light of these facts, that the salesnote was merely a device by which Aberman protected his commission, and not the contract.

■ Undoubtedly, Novik believed that it had a binding contract irrespective of Archley's salesnote. And all the terms of that contract (other than the arbitration clause) are contained in Novik's invoice, and in Mann's confirmation of purchase. But these facts do not undermine Novik's contention that the salesnote was the contract. The note itself states it is the contract, and the entire contract, subject to modification only by a writing. Moreover, Novik's invoice contains on its face a reference to "ASIC" as the Salesman. Martin Winnick, Comptroller of Novik, testified that "ASIC" means Archley Sales, Inc.; that the invoice was prepared to reflect the contract as negotiated by Archley; that the "contract" Novik was confident it possessed on June 15 was that negotiated by Archley; and that copies of some subsequent correspondence was sent to Archley as broker. Winnick also confirmed Aberman's testimony that the procedure followed here was accepted in the trade. Merchants in this industry usually make oral deals, which are later put into writing.

■ Based on these facts and the credible testimony of Aberman and Winnick, it is clear that Archley acted as broker, negotiated a contract, and later prepared and sent a written contract to the parties for confirmation. Assuming that Aberman had not discussed the arbitration clause with either Novik or Mann, it was a matter that could reasonably be agreed upon by the parties so soon after their oral agreement. Had Mann refused to sign the salesnote stub because an arbitration clause had been included, it may well have successfully avoided that part of the contract eventually reached. *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 334, 408 N.Y.S.2d 410, 414, 380 N.E.2d 239, 242 (1978), holds that "an arbitration clause is a material addition which can become part of a contract only if it is expressly assented to by both parties." When Mann's representative signed the stub and returned it to Archley, however, an agreement to arbitrate was included in the contract.

Respondents claim that Mr. Geisler received the Archley salesnote stub unattached to the salesnote, and that Geisler had never seen the salesnote with the arbitration clause. (Geisler Affidavit) When invited to testify to these facts, however,

Mr. Geisler failed to appear, although the hearing was adjourned to enable him to travel here from California. This is hardly surprising, since it is impossible to believe that any businessman would sign a stub under an Archley Sales, Inc. heading, acknowledging a specifically numbered salesnote, when he had done no business with Archley and when the terms of the salesnote were unknown.

 In light of the bad faith reflected by the Geisler affidavit, and in light of the unnecessary and unjustifiable persistence with which respondents have pursued their state litigations, and with which they opposed arbitration, petitioner's request for attorney's fees and costs is granted. Petitioner is to file an affidavit supporting its application for fees within ten days of this opinion, on notice, duly supported with details of expenditures and time spent, and limited to efforts necessary to enforce this arbitration agreement. In addition, petitioner is to file within the same time period a judgment on notice ordering respondent to arbitrate and to pay fees and costs; and permanently staying the state court actions.

SO ORDERED.