**GRANITEVILLE COMPANY,**
Petitioner,

v.

**STAR KNITS OF CALIFORNIA,**
**INC., Respondent.**

No. 87 Civ. 7843 (RWS).

United States District Court,
S.D. New York.

Jan. 29, 1988.

OPINION

SWEET, District Judge.

Petitioner Graniteville Company ("Graniteville") has filed a petition under the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration with respondent Star Knits of California, Inc. ("Star Knits"). Upon the affidavits and memoranda submitted by both parties and oral argument held November 20, 1987, the petition to compel arbitration is granted.

*Facts*

Graniteville is a textile mill with a principal place of business in New York. Star Knits is a garment manufacturer in California. Ehrlich, Gress & Co., Inc. ("EGC") is an independent textile broker in New York.

Sometime prior to May 21, 1987 Star Knits contacted EGC to obtain 255,000 yards of sheeting in three shipments for September, October and November and confirmed this request by a memorandum stating credit terms of net 10 days to 60. On May 21, 1987 EGC issued its salesnote ("Salesnote 8643A") to Graniteville as seller and Star Knits as buyer. Salesnote 8643A stated credit terms of net 10 days and contained an arbitration clause. Graniteville then confirmed the broker's contract by mailing to Star Knits its own standard form contract ("Contract 00912") dated 6/9/87 which also stated credit terms of net 10 days and contained an arbitration clause.

There was no further communication between the parties until October 13, 1987 when Star Knits notified EGC and Graniteville by letter that it was cancelling Salesnote 8643A. On October 20, 1987, Graniteville mailed Star Knits a "Shipment Notice" that indicated that the shipment purchased through EGC's Salesnote 8643A was en

route from an overseas supplier. By letter dated October 23, 1987, Graniteville acknowledged receipt of Star Knits' cancellation letter of October 13, 1987 and informed Star Knits that it rejected the latter's unilateral cancellation of Salesnote 8643A. The goods were never delivered to Star Knits.

*The Federal Arbitration Act*

■ The sole question for decision is whether the parties to this action entered into a valid agreement to arbitrate.[1] The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976) (the "Act"), makes an agreement to arbitrate enforceable and provides that a party may petition a district court for an order directing that arbitration go forward in the manner provided in such agreement. 9 U.S.C. § 4 (1976). Since the Act requires the district court to be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," 9 U.S.C. § 4, a federal court can adjudicate "issues relating to the making and performance of the agreement to arbitrate," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967), and can declare any such agreement invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1976); *see Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

Although the Act permits federal courts to develop federal substantive law on the interpretation, enforceability and scope of arbitration agreements, *Guinness–Harp Corp. v. Joseph Schlitz Brewing Co.*, 613 F.2d 468, 472 (2d Cir.1980); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 406–08 (2d Cir.1959), the Act does not displace state law on the general principles of contract formation. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 404 n. 12, 87 S.Ct. at 1806 n. 12; *Supak & Sons Mfg. Co. v. Pervel Indus.,*

*Inc.*, 593 F.2d 135, 137 (4th Cir.1979); *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 573 (2d Cir.1968); *Duplan Corp., Etc. v. W.B. Davis Hosiery Mills*, 442 F.Supp. 86, 87–88 (S.D.N.Y. 1977). As the Court stated in *Duplan Corp.*, 442 F.Supp. at 88, "[t]he question whether a valid arbitration clause exists involves general contract principles; state law governs the disposition of that issue." *See also Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972); *V'Soske v. Barwick*, 404 F.2d 495, 499–500 (2d Cir. 1968) (relying on New York decisions for general principles of contract law); *Fairfield–Noble Corp. v. Pressman–Gutman Co.*, 475 F.Supp. 899, 902 n. 2 (S.D.N.Y. 1979).

*Existence of an Agreement to Arbitrate*

As its defense to the petition to compel arbitration, Star Knits contends that it never entered into an agreement to arbitrate with Graniteville. Star Knits argues that Salesnote 8643A and Contract 00912 contained additional provisions, such as the arbitration clause and a different credit provision, that materially altered the terms of Star Knits' initial offer. Under New York's Uniform Commercial Code ("N.Y.U. C.C.") § 2–207(2)(b), Star Knits contends, these additional terms did not become part of a contract between it and Graniteville. *See Matter of Marlene Indus. Corp. & Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978). Rather, Star Knits contends that they constituted counter-offers which it never accepted in writing or by any other acts that could be deemed to constitute acceptance. Consequently it concludes that it is not bound by the arbitration provisions contained in Salesnote 8643A and Contract 00912.

■ Star Knits' argument mischaracterizes the nature of the agreement between the parties. As Graniteville correctly points out in its brief, several recent deci-

---

1. Although the Act provides that a jury trial may be held on the issue of whether the parties entered into an agreement to arbitrate, 9 U.S.C. § 4; *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673, 677 (2d Cir.1972), the submissions of the parties do not raise any genuine issues of fact. Accordingly, the legal issue presented by Graniteville's petition will be determined on the undisputed facts set forth by the parties.

sions by the New York Court of Appeals hold that when a sale of goods is negotiated by a broker who sends salesnotes containing an arbitration clause to both parties, the broker is deemed to act for both parties. Although the parties do not expressly agree to arbitration and do not sign the broker's notes, the "buyer and seller nonetheless are bound to arbitrate in accordance with those documents when they merely retain them and proceed with the transaction." *Itoman (U.S.A.), Inc. v. Daewoo Corp.*, 68 N.Y.2d 925, 510 N.Y.S. 2d 74, 76, 502 N.E.2d 989, 991 (1986); *see Just In–Materials Designs v. I.T.A.D. Assoc., Inc.*, 61 N.Y.2d 882, 474 N.Y.S.2d 470, 471, 462 N.E.2d 1188, 1189 (1984). Thus, unlike *Marlene Indus. Corp.*, 408 N.Y.S.2d at 411, 380 N.E.2d at 240, this case does not present a "battle of the forms" in which both buyer and seller have exchanged documents with contradictory provisions.[2] Rather, whether an agreement to arbitrate exists turns on the parties' actions with respect to Salesnote 8643A.

Here, Star Knits acted only through EGC, the broker, as did Graniteville. If there was a contract between the parties, it was negotiated by EGC on behalf of both parties and its terms set forth in a single document, Salesnote 8643A.[3] As the Court of Appeals has recently held, a broker's salesnote becomes binding on both parties if they "merely retain them and proceed with the transaction." *Itoman (U.S.A.) Inc.*, 510 N.Y.S.2d at 76, 502 N.E.2d at 991. Whether a party who receives a broker's salesnote can be said to have "proceeded with the transaction" and thereby have ratified the contents of the salesnote turns on the acts of the party following receipt of the note. In *Just In–Materials Designs*, 474 N.Y.S.2d at 471, 462 N.E.2d at 1189,

the Court of Appeals stated, "[r]etention by the buyer of the sale note and the seller's contract form and the subsequent delivery of and payment for goods as contemplated by the sale note constituted ratification of the agreement between the parties made on their behalf by the broker, including the provision therein for arbitration, even though the latter provision had never been expressly discussed with either party...." Similarly, in *Itoman (U.S.A.), Inc.*, 510 N.Y.S.2d at 75, 502 N.E.2d at 990, the party seeking to avoid arbitration had taken delivery of the goods. *See also Ernest J. Michel & Co. v. Anabasis Trade, Inc.*, 50 N.Y.2d 951, 431 N.Y.S.2d 459, 460, 409 N.E.2d 933, 933 (1980) (agreement to arbitrate manifested by buyer's signing of seller's confirmation form containing arbitration agreement).

Graniteville contends that Star Knits' explicit reference to Salesnote 8643A in its October 13 cancellation letter constitutes an acknowledgement and ratification of its terms. The cases upon which Graniteville relies, however, do not support the proposition that a party's written refutation of a document can alone bind that party to the terms of the document. In *National Agricultural Commodities, Inc. v. International Commodities Export Co.*, 108 A.D. 2d 735, 484 N.Y.S.2d 902 (2nd Dep't 1985), the party attempting to circumvent an arbitration clause had already filed a complaint alleging breach of the contract that contained the arbitration clause. The Court held that by the party's own judicial admission it had adopted the document containing the arbitration clause as a binding contract. Similarly, as already discussed, in *Just In–Materials Designs*, 474 N.Y.S.2d 470, 462 N.E.2d 1188, the Court found that the receipt and payment for goods by the

---

**2.** Because arbitration clauses are commonly used in the textile trade, *Helen Whiting, Inc. v. Trojan Textile Corp.*, 307 N.Y. 360, 368, 121 N.E.2d 367 (1954), however, even in cases involving a "battle of the forms" New York courts have held that "a textile buyer's failure to object to an arbitration clause upon receipt of both the sales agreement signed by the seller and the initial shipment of goods binds the buyer to the arbitration clause." *Imptex Int'l Corp. v. Lorprint, Inc.*, 625 F.Supp. 1572 (S.D.N.Y.1986); *see Lehigh Valley Indus., Inc. v. Armtex, Inc.*, 53

A.D.2d 582, 384 N.Y.S.2d 837, 838 (1st Dep't 1976); *Gaynor–Stafford Indus., Inc. v. Mafco Textured Fibers*, 52 A.D.2d 481, 384 N.Y.S.2d 788, 791 (1st Dep't 1976).

**3.** Thus, the resolution of whether Salesnote 8643A was binding as between the parties does not require an analysis of N.Y.U.C.C. § 2–207, "Additional Terms in Acceptance or Confirmation."

party seeking to avoid the arbitration clause constituted ratification of the salesnote containing that clause.

On the other hand, having engaged a broker to act on its behalf in obtaining a contract for the purchase of goods, Star Knits had an obligation to object to the terms of Salesnote 8643A within a reasonable time. *Matter of Huxley*, 294 N.Y. 146, 150, 61 N.E.2d 419 (1945); *J.K. Knitting Mills, Inc. v. Dorgin*, 273 A.D. 591, 78 N.Y.S.2d 488 (1st Dep't 1948). Here, Star Knits received Salesnote 8643A in late May and Graniteville's confirmation of that contract in the middle of June. Star Knits then waited more than three months, until October 13, to cancel a shipment of goods scheduled to be delivered in early November. As the Court stated in *J.K. Knitting Mills*, 78 N.Y.S.2d at 490, when a broker acts for both parties to a transaction,

> ... especial and usually controlling importance attaches, in the practical conduct of commercial transactions, to whether the buyer and seller retain the broker's memoranda without objection for a reasonable period of time. Ratification is there equivalent to prior authorization. (citations omitted). Failure to object promptly thus furnishes a useful, objective test of whether the broker was authorized to make the deal expressed in the memoranda.

Here, by failing to object to the terms of Salesnote 8643A within a reasonable time, particularly after it had received Graniteville's confirmation notice, Star Knits ratified the terms of Salesnote 8643A. Thus, it is bound to arbitrate the dispute that has now arisen as a result of its cancellation of that contract.

For the reasons set forth above, Graniteville's petition for an order compelling arbitration is granted. The parties are directed to arbitrate their dispute under the rules of the General Arbitration Council of the Textile Industry.

IT IS SO ORDERED.