**ASTOR CHOCOLATE CORP., Plaintiff,**

v.

**MIKROVERK LTD. and Mikroverk AS, Defendant.**

**No. CV–88–3380.**

United States District Court,
E.D. New York.

Jan. 20, 1989.

Sheldon Krause, Zyskind & Krause, New York City, for plaintiff.

Steven M. Nachman, Webster & Sheffield, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant Mikroverk Ltd. moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), or, alternatively, asks the court to stay the action pending the outcome of an arbitration proceeding. The resolution of the motion turns on whether an arbitration clause unilaterally added to the terms of the agreement set forth in a sales confirmation letter ultimately became part of a contract between the parties. For the reasons that follow the motion to dismiss pursuant to Rule 12(b)(1) is granted.

This is an action for breach of contract and breach of warranty brought by the plaintiff, a Brooklyn chocolate manufacturer, against two foreign corporate defendants. Jurisdiction is based on diversity of citizenship.[1] During the time period at issue, Defendant Mikroverk Ltd., a Canadian corporation, acted as sales agent for defendant Mikroverk AS, a Danish corporation, now apparently dissolved.[2] Karlsen Affidavit ¶ 2.

During October, 1981, plaintiff had discussions with the American Chocolate Mold Company (ACMC), a manufacturer and importer of chocolate equipment, regarding the design, manufacture and installation of a "Jensen molding line" chocolate molding machine. ACMC referred the account to Mikroverk Ltd. On December 22, 1981, plaintiff placed a verbal order for the design, manufacture and installation of a Jensen molding line with Kurt Bogh Karlsen, Mikroverk Ltd.'s president.

Mikroverk Ltd. confirmed the verbal order by letter dated Dec. 23, 1981. *See* Complaint, Exhibit A. That letter sets forth the specifications for the equipment, the purchase price, and other terms. The 12/23/81 confirmation letter includes the following clause:

> *Guarantee:* We guarantee the proper working of the machine if operated with care and necessary skill, if the installation have been completed under our control and normal good qualities of raw materials are being used. For the rest guarantee is rendered according to our General Conditions, which form an integral part of this quotation.

(emphasis added).

Karl Grunhut, then vice president of the plaintiff corporation, subsequently went to

---

**1.** Although the complaint alleges an amount in controversy exceeding only $10,000, the file contains a letter from plaintiff's attorney to the Clerk of the Court, dated November 10, 1988, stating that the amount in controversy exceeds $50,000.

**2.** Defendant's motion papers indicate that plaintiff never served Mikroverk AS. *See* Defendant's Memo of Law at 2 n. 1.

Mikroverk AS in Denmark in January, 1982, for discussions concerning refinements to the Jensen molding line's design and specifications. Mikroverk Ltd. in Canada proposed further refinements in a telex to plaintiff dated February 8, 1982. *See* Complaint, Exhibit B. On February 25, 1982, plaintiff and defendants entered into an oral contract for the sale of the Jensen molding line. Complaint ¶ 15.

Mikroverk Ltd. forwarded to plaintiff a sales confirmation letter dated Feb. 25, 1982 confirming the sale of the molding line and setting forth the molding line's specifications. *See* Complaint, Exhibit C [also Karlsen Affidavit, Exhibit A]. That sales confirmation contained the following language:

> *Guarantee:* We guarantee the proper working of the machine if operated with care and necessary skill and if the machine has been installed under our control and normal good qualities of chocolate have been used.
>
> **For the rest guarantee is rendered according to our General Conditions enclosed, which form an integral part of this sale.**
>
> We furthermore guarantee that the machine will comply with the US sanitary requirements.

(emphasis added). The General Conditions spoken of in the above guarantee clause were attached to the 2/25/82 sales confirmation. In addition to other provisions, that document contained a clause captioned "Arbitration and Applicable Law" which reads as follows:

> The contract shall be governed by Danish law.
>
> Any dispute arising out of the contract shall be settled finally by arbitration in Copenhagen in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce.

Despite specifications in the 2/25/82 sales confirmation letter promising delivery by the end of November 1982 and completion of installation within three weeks of delivery, the molding line was actually delivered in December 1983, and the installation completed in March 1984. Complaint

¶¶ 18–21. According to plaintiff, throughout 1984 the molding line failed to perform to specifications.

In a January 25, 1985 letter, Peter Sosted, president of Mikroverk AS advised Erwin Grunhut, plaintiff's president, that a revamping of the equipment would be necessary at (for the most part) the expense of Mikroverk AS, and set forth the specifications for the revamping. *See* Complaint, Exhibit D [also Karlsen Affidavit, Exhibit B]. Further, the 1/25/85 letter included the following language:

> We feel since our total expenditures at this point far exceed our sales price, and we are now committing another large expenditure that we would like a commitment from you that at proper running of this equipment the full payment due and owing to us in the amount of *German Marks 125,360.00* be paid. This payment should be made upon your acceptance of the equipment, and it is our belief that there should be no further obligations on our part others [sic] than normal guarantees. It is understood that our guarantee will begin from the proper running of this equipment, and **we will meet all of our obligations as specified in our sales conditions. We are enclosing an additional copy, which is the same as that sent together with our original sales confirmation.**
>
> **... If you find the above conditions to be satisfactory, we would ask you to sign the enclosed copy and return it to Mr. Kurt Karlsen.**

(emphasis added). Plaintiff agreed to the terms of the revamping as set forth in the 1/25/85 letter and indicated that agreement by Mr. Grunhut's signature. Despite the revamping, the molding line allegedly failed to function according to the plaintiff's requirements. Complaint ¶¶ 26–30. Nevertheless, in response to a letter dated September 17, 1986 from Kurt Karlsen of Mikroverk, Ltd. to plaintiff, plaintiff remitted to defendant $60,849.74, the equivalent of the payment due on the molding line in German Marks. Karlsen Affidavit ¶¶ 6–7. Over a year later, plaintiff notified defendant of its dissatisfaction with the molding

line by letter dated February 29, 1988. Karlsen Affidavit ¶ 9.

Defendant's motion assumes both the validity of the sales contract and the incorporation into that contract of all of the General Conditions including the arbitration clause. In support of the enforcement of the arbitration agreement the defendant relies upon certain provisions of the Federal Arbitration Act, 9 U.S.C. § 2 *et seq.* and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38 (Dec. 29, 1970); implemented by 9 U.S.C. § 201 *et seq.*[3] Plaintiff concedes that these statutory and Convention provisions would properly apply "where a valid and enforceable agreement to arbitrate disputes has been found to exist," *see* Plaintiff's Memo of Law at 3, and, therefore, the issue is not the scope of the arbitration clause,[4] but whether it exists as part of the contract.

■ While federal law governs the issue of the scope of an arbitration clause, state law governs the issue of whether or not the clause is a part of the contract. *See, e.g.,*

*Wren Distributors, Inc. v. Phone–Mate, Inc.,* 600 F.Supp. 1576, 1579 (E.D.N.Y.1985) ("In determining whether a party is bound by an arbitration agreement, a federal court will look to state contract law principles."). Further, New York law, as the law of the state with the most contacts with the sales transaction, would govern the determination of whether a contract exists. *See G.A. Thompson & Co. v. Wendell J. Miller Mortgage Co.,* 457 F.Supp. 996, 998 n. 2 ("In a contract action, absent explicit choice of law by the parties, the applicable law will be the local law of the state which has the most significant relationship to the transaction and the parties." (citing Restatement (Second) of Conflict of Laws)).

■ Plaintiff can only be required to arbitrate if plaintiff has agreed to arbitrate. *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Under New York law, such an agreement must be explicit and unequivocal if it is presented as a unilateral addition to terms between merchants. New York's

**3.** Article II of the Convention states:
    1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning subject matter capable of settlement by arbitration.
    2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
    3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.
Section 202 of Title 9 states, in pertinent part, as follows:
An arbitration agreement or arbitral award arising out of a legal relationship whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the

United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states....
*See also* note 43 to the Convention.
I think it is quite clear that the agreement between the parties falls within the Convention. First, the agreement provides for arbitration in a "Contracting State," *i.e.,* Denmark. Second, the agreement is in a form accepted by the Convention as a written agreement, *i.e.,* an exchange of letters. Third, the dispute arises out of a commercial, contractual relationship in accordance with § 202. Finally, the agreement is not between citizens of the United States, also in accordance with § 202.

**4.** Defendant asserts the strong federal policy favoring arbitration, especially in international commerce matters. *See* Defendant's Memo of Law at 5. However, that policy actually urges arbitration of as many issues as possible where an arbitration agreement exists under the Federal Arbitration Act (*see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Here, because this dispute actually concerns the existence of the arbitration clause, the policy argument would seem inapplicable.

Uniform Commercial Code § 2–207 interprets any additional terms made in an acceptance of a contract for the sale of goods between merchants as part of the contract, unless such terms materially alter the contract. N.Y.U.C.C. § 2–207(a) (McKinney's 1964, Supp.1988). The New York Court of Appeals considers the addition of an arbitration clause to be material. *See Matter of Marlene Industries Corp.*, 45 N.Y.2d 327, 334, 380 N.E.2d 239, 242, 408 N.Y.S.2d 410, 413 (1978) ("the inclusion of an arbitration agreement materially alters a contract for the sale of goods, and thus, pursuant to section 2–207 (subd. [2], par. [b] ), it will not become a part of such a contract unless both parties explicitly agree to it."). An agreement to arbitrate " 'must be clear and direct, and must not depend upon implication, inveiglement or subtlety,' " *Marlene Industries*, 45 N.Y.2d at 335, 380 N.E.2d at 242, 408 N.Y.S.2d at 413 (quoting *Matter of Doughboy Inds.*, 17 A.D.2d 216, 220, 233 N.Y.S.2d 488, 493 (1st Dep't 1962)).

*Marlene Industries*, as plaintiff correctly contends, has been repeatedly relied upon by New York courts and federal courts applying New York law. However, recent decisions by the New York Court of Appeals have been paring down *Marlene Industries'* holding, markedly restricting its reach to cases mirroring *Marlene*'s facts (for the most part, involving "battles of the forms"). *See, e.g., Ernest J. Michel & Co. v. Anabasis Trade, Inc.*, 50 N.Y.2d 951, 409 N.E.2d 933, 431 N.Y.S.2d 459 (1980).

In *Graniteville Co. v. Star Knits of California*, 680 F.Supp. 587 (S.D.N.Y.1988) the court held that unless a true battle of the forms is at issue, § 2–207 does not even apply. The court also held that whether an arbitration agreement existed would depend upon the actions of the parties. *Id.* at 589.

The plaintiff relies on the assertion that the parties never negotiated for an arbitration clause or discussed dispute resolution. *See* Plaintiff's Memo at 9. Plaintiff further argues that its president never took notice of the General Conditions containing the arbitration clause, and that those condi-

tions were never called to his attention by defendants. Grunhut Affidavit ¶ 4.

In *Just In–Materials Designs, Ltd. v. I.T.A.D. Assoc., Inc.*, 61 N.Y.2d 882, 462 N.E.2d 1188, 474 N.Y.S.2d 470 (1984), the court held that where a buyer retained both a sale note and the seller's contract form and subsequently accepted delivery of and paid for the goods as contemplated by the sale note, such action on the buyer's part "constituted ratification of the agreement between the parties . . ., including the provision therein for arbitration, even though [that] provision had never been expressly discussed with either party" by the broker who arranged the deal. *Id.* at 883, 462 N.E.2d at 1189, 474 N.Y.S.2d at 471. *See also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987) (finding party bound to arbitrate notwithstanding absence of signed agreement where parties were of equal bargaining strength). The lack of discussion concerning the clause, therefore, would not preclude considering it as part of the contract.

The contention that defendant did not "refer" plaintiff to the General Conditions lacks merit. As has been indicated, there were numerous references to the General Conditions and to their incorporation into the agreement terms which were set out in each communication to plaintiff. In addition, the plaintiff's complaint states as a second cause of action breach of both express and implied warranties. Most of the express warranties which would be relevant to this lawsuit are contained in the guarantee provision included in the General Conditions plaintiff seeks to sever from the contract. Further, although the "explicitness" of the agreement to arbitrate need not be in the form of a signature, *see, e.g., McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980), the plaintiff's president did sign the 1/25/85 letter, acknowledging all the terms included therein. The arbitration clause, and all the General Conditions were incorporated by reference into that letter. There can be little doubt that plaintiff had knowledge of the arbitration clause and simply chose to ignore it.

Finally, because the Convention governs this agreement (see note 3 *supra*), the motion to dismiss for lack of jurisdiction must be granted. In *Siderius, Inc. v. Compania de Acero del Pacifico*, 453 F.Supp. 22 (S.D.N.Y.1978), the court examined an agreement to arbitrate an international commercial dispute in Chile. The court construed the language of the Convention together with the language of the applicable sections of the Arbitration Act and found that once an agreement falls within the terms of the Convention and an issue is arbitrable thereunder, the referral procedure from district court to arbitrator and the lack of a provision for retention by the district court would require dismissal for lack of subject matter jurisdiction. *Id.* at 24–25. *Accord Eastern Europe, Inc. v. Transportmaschinen Export–Import, Inc.*, 658 F.Supp. 612 (S.D.N.Y.1987).

SO ORDERED.