666 So.2d 166 (1995)
ADVANCED MOBILEHOME SYSTEMS OF TAMPA, INC.; Advanced Mobilehome Systems, Inc.; Advanced Mobilehome Systems of Sarasota, Inc.; Advanced Mobilehome Systems of Ft. Pierce, Inc.; and Advanced Mobilehome Systems of Ft. Myers, Inc., Appellants,
v.
ALUMAX FABRICATED PRODUCTS, INC., Appellee.
Nos. 94-01994, 94-03573.
District Court of Appeal of Florida, Second District.
November 8, 1995.
*167 Thomas R. Shahady and John J. Shahady of Houston & Shahady, P.A., Fort Lauderdale, for Appellants.
J. Kevin Carey and James B. Baldinger of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for Appellee.
RYDER, Acting Chief Judge.
The appellants, who we will collectively refer to as "Advanced Systems," challenge a judgment entered in favor of Alumax Fabricated Products, Inc. on its action for reimbursement of sales tax assessed by the Florida Department of Revenue. We reverse the judgment and remand with directions to the trial court to enter judgment in Advanced Systems' favor. Our reversal on this point moots the issues in the consolidated appeal, which concerned the court's award of attorney's fees, costs and prejudgment interest to Alumax.
Between July 1988 and May 1992, Alumax sold roll roofing products to Advanced Systems. With each shipment of product, Alumax sent Advanced Systems an invoice. The front of each invoice contained a box entitled "tax." On each invoice the word "no" was printed in the box. The back of the invoice contained a list of fifteen terms and conditions. The last sentences of the first condition stated: "Prices do not include sales, excise, use or other taxes now in effect or hereafter levied by reason of this transaction. All such taxes shall be for Buyer's account." It is undisputed that the total price shown on each invoice did not include Florida sales tax.
In 1992, the Florida Department of Revenue audited Alumax and discovered its failure to collect sales tax on the transactions with Advanced Systems. Alumax notified Advanced Systems of the problem. In November 1992, the Department levied the appropriate sales tax, interest and a reduced penalty. Alumax paid the amount levied, then filed suit against Advanced Systems for reimbursement.
After a bench trial, the court entered judgment in favor of Alumax. It found that Alumax was entitled to recover the amount it paid to the Department of Revenue based on a straight-forward reading of the contract between the parties, as expressed in the written terms of the invoices. It further found that Advanced Systems did not reject the terms of the invoices, and, therefore, the written terms governed under sections 672.201(2) and 672.207(2), Florida Statutes (1991).
Our analysis of this case begins with section 212.07(2), Florida Statutes (1991). It provides that a dealer must add the amount of sales tax to the price and must separately state the amount of sales tax on its invoices. Further,
[e]xcept as otherwise specifically provided, any dealer who neglects, fails, or refuses to collect the tax herein provided upon any, every, and all retail sales made by him or his agents or employees of tangible personal property or services which are subject to the tax imposed by this chapter shall be liable for and pay the tax himself.
§ 212.07(2), Fla. Stat. (1991). A seller who has neglected to separately state sales tax on invoices sent to a buyer waives any right to later recover the amount of taxes from the buyer. Structural Steel, Inc. v. Owen Joist of Florida, Inc., 581 So.2d 951 (Fla. 1st DCA 1991). In Donoghue v. Wallach, 455 So.2d 1085 (Fla. 2d DCA 1984), we held that the portion of section 212.07(2) that provides the sales tax is a debt from the purchaser to the seller is conditional upon the seller's compliance *168 with the requirement to separately state the tax on the invoice.
At the beginning of the parties' business relationship, Advanced Systems submitted a credit application to Alumax that did not reflect whether it had a resale certificate. A buyer with a resale certificate need not pay Florida sales tax. See Fla. Admin. Code Ann. Rule 12A-1.038 (1995). In fact, Advanced Systems did not have such a certificate. The trial court found that Alumax's personnel inadvertently failed to insert into its computer system the fact that Advanced Systems was subject to Florida sales tax. The computer thereafter generated the invoices, which incorrectly reflected no sales tax owing. Based on this finding, section 212.07(2) would mandate that Alumax was liable for the uncollected tax, with no right of reimbursement from Advanced Systems. See Structural Steel; Donoghue.
Alumax contends that the analysis of this issue does not end with the statute because Advanced Systems agreed to pay any sales tax subsequently levied. In support of this proposition, it directs us to Leonard Parker Co. v. SPV Partners, 582 So.2d 642 (Fla. 3d DCA 1991). In that case, as here, the seller, through a computer error, failed to collect the sales tax. The seller paid the tax owing and sought reimbursement from the buyer. The lower court granted summary judgment in the buyer's favor. There, however, the parties had entered into a written agreement under which the buyer agreed to be responsible for all sales taxes. The Third District noted that if no contractual agreement had stated otherwise, the seller would be solely liable for the tax. But because the buyer had specifically assumed that obligation in the contract, it held summary judgment was improper.
The facts in Leonard Parker are distinguishable from those in this case. Here, the parties did not enter into a signed written agreement on the tax issue. Alumax relies on language on the back of its invoices to establish Advanced Systems' agreement to pay the sales tax. In order to determine whether the invoices bring this case within the ambit of Leonard Parker, we must look to the Uniform Commercial Code. The trial court found Advanced Systems had not rejected Alumax's invoices, and, therefore, the written terms of the invoices, including the provision that sales taxes were the buyer's responsibility, governed. It based its decision on sections 672.201(2) and 672.207(2), Florida Statutes (1991).
The objection-on-receipt provisions in sections 672.201 and 672.207 are sometimes confused. The portions of those sections relevant to this case are as follows:
672.201 Formal requirements; statute of frauds. 
(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
607.207 Additional terms in acceptance or confirmation. 
(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

*169 (a) The offer expressly limits acceptance to the terms of the offer;
(b) They materially alter it; or
(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
Section 672.201 is not applicable here. It deals solely with the question of whether a contract is enforceable in the face of a statute of frauds defense. See Marlene Industries Corp. v. Carnac Textiles, Inc., 45 N.Y.2d 327, 331, 380 N.E.2d 239, 240, 408 N.Y.S.2d 410, 411-412 (1978); see generally White and Summers, Uniform Commercial Code, § 2-3 (2d Ed. 1980). Advanced Systems did not raise that defense. The dispute in this case goes only to the terms of the agreement with Alumax. A confirming writing that satisfies section 2-201 of the Uniform Commercial Code does not prove the terms of the contract, it merely eliminates the statute of frauds defense. Hinson-Barr, Inc. v. Pinckard, 292 S.C. 267, 268, 356 S.E.2d 115, 116 (1987); General Matters, Inc. v. Penny Products, Inc., 651 F.2d 1017, 1020 (5th Cir.1981).
In order to determine whether Advanced Systems' failure to reject the invoices acted as an approval of Alumax's terms, we must examine section 672.207(2). The parties do not dispute that they are merchants for purposes of this section. Advanced Systems presented testimony that they understood the price Alumax quoted was "delivered to the door," meaning that it was all inclusive. Apparently, the parties never specifically discussed the issue of sales tax. As such, the term of the invoice that stated the buyer would be responsible for all sales taxes "hereinafter levied" was an additional term under section 672.207. Between merchants, such additional terms become part of the contract unless they fall within the three stated exceptions. § 627.207(2)(a), (b) and (c), Fla. Stat. (1991). The only exception potentially applicable to this case is (b), which rejects additional terms that materially alter the parties' contract.
The Uniform Code Comment to section 627.207(2) notes that additional terms which materially alter a contract are those that would result in surprise or hardship if incorporated without express awareness by the other party. In a case somewhat similar to this one, Union Carbide Corp. v. Oscar Mayer Foods Corp., 947 F.2d 1333 (7th Cir.1991), the seller sought reimbursement from the buyer for additional sales tax the State of Illinois levied on the parties' transactions eight years after the fact. The seller based its claim on the following printed provision on the back of its invoices:
in addition to the purchase price, Buyer shall pay Seller the amount of all governmental taxes ... that Seller may be required to pay with respect to the production, sale or transportation of any materials delivered hereunder (emphasis in original).
947 F.2d at 1334. The Union Carbide court found that this provision constituted a material alteration of the parties' agreement which was unenforceable because the buyer did not explicitly or implicitly agree to it.
The reasoning of Union Carbide leads to the same result in this case. Alumax presented no evidence that Advanced Systems consented explicitly or implicitly, through a course of dealings, to pay sales tax. As the Union Carbide court noted, if an amount of sales tax had appeared on the invoice, the buyer would have to pay it. The buyer could then, however, decide not to continue ordering products from the seller. Assuming responsibility for the tax on one invoice is quite different from assuming an open-ended liability for back taxes. 947 F.2d at 1337. We hold that the additional term on Alumax's invoice concerning sales tax liability constituted a material alteration of Advanced Systems' offer to purchase. The contract is enforceable, minus the additional term Alumax attempted to add. See Union Carbide.
Because we hold that Advanced Systems had no contractual obligation to pay back taxes, Leonard Parker is inapplicable. This case is therefore governed by section 212.07(2), Florida Statutes (1991). Alumax failed to separately state the sales tax as required by that section. As such, it is solely responsible for payment of the back taxes assessed. Structural Steel; Donoghue. We *170 reverse the judgment entered against Advanced Systems and remand to the trial court to enter judgment in its favor.
Reversed and remanded.
PATTERSON and WHATLEY, JJ., concur.